**Edwin M. RANSBURG, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 278–70.**

United States Court of Appeals, Tenth Circuit.

March 4, 1971.

Rehearing Denied April 8, 1971.

---

Howard A. Spies, Topeka, Kan. (Schroeder, Heeney, Groff & Spies, Topeka, Kan., on the brief) for plaintiff-appellant.

Gordon S. Gilman, Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Robert J. Roth, U. S. Atty., of counsel; and Joseph M. Howard and Bennet N. Hollander, Attys., Dept. of Justice, Washington, D. C., on the brief) for defendant-appellee.

Before LEWIS, Chief Judge, McWILLIAMS, Circuit Judge, and DOYLE, District Judge.

McWILLIAMS, Circuit Judge.

This is a tax refund case wherein one Edwin M. Ransburg, the taxpayer, made claim in the United States District Court of Kansas for refund of federal income taxes paid by him for the years 1960 and 1961 which were alleged by him to have been erroneously assessed and collected by the United States of America. As to certain of the matters in controversy, the trial court ruled in favor of the taxpayer; as to other matters the trial court held for the Government, with the resultant judgment being in favor of the taxpayer in the amount of $48,228.71.

The taxpayer now appeals those matters determined adversely to him. Specifically, the taxpayer asserts that the trial court erred in holding that certain litigation expense incurred by him in the years 1960 and 1961 was not a deductible expense on his personal tax returns. As an alternative position, the taxpayer asserts that the litigation expense should at least be deemed a capital expenditure and added to the basis of his stock holdings thereby reducing the long-term capital gain reportable by him in 1961, the year when he sold his 20% stock interest in the corporation here under consideration.

The Ransburg Electro-Coating Corporation, hereinafter referred to as the Corporation, was a family owned corporation engaged in the research, development and marketing of its electrostatic painting developments. As concerns stock ownership, Edwin Ransburg, the taxpayer, owned 20% of the stock; his two brothers each owned 20% of the stock; and his father, who started the family business, owned the remaining 40% of the Corporation's stock.

In addition to owning 20% of the stock in the Corporation, the taxpayer had served as a director and officer of the Corporation since its formation in 1948 and also was employed by the Corporation at a substantial salary. As concerns the nature of his employment, the taxpayer, who was an inventor of note, was primarily engaged in the re-

search, development and legal divisions of the Corporation, and while thus employed some 28 patents of which the taxpayer was either the sole inventor or the co-inventor had been assigned to the Corporation.

Since the formation of the Corporation the taxpayer and the other three family shareholders had a buy and sell agreement providing that in the event of the death of a shareholder, or a shareholder's attempted transfer of stock, the Corporation would have first option to purchase the stock. The agreement further provided that if the Corporation failed to exercise its option, the other shareholders then had the opportunity to purchase the shares. The purchase price of such stock, under the terms of the agreement, was subject to renegotiation from time to time and in fact had been adjusted several times prior to 1960.

Down through the years a certain amount of friction and difference of opinion developed within the Ransburg family as to the conduct and operation of the Corporation, to the end that in 1960 the taxpayer's father and brothers were considering selling their interest in the Corporation. The taxpayer, however, did not want to sell to any outside group and claimed that the buy and sell agreement gave him the right to purchase the stock of the other shareholders before it could be sold to an outside group. With the battlelines thus drawn, i. e., the taxpayer refusing to join in any sale and asserting that the buy and sell agreement precluded the others from selling to an outsider, the other Ransburgs then informed the taxpayer that they, on the advice of counsel, intended to vote their 80% stock interest in favor of selling the assets of the Corporation and would thereby circumvent the buy and sell agreement.

It was in this general setting that the taxpayer brought a declaratory judgment action in the Indiana state court against the Corporation and the other shareholders seeking a determination of their respective rights under the buy and sell agreement. The complaint was later amended to include a request for an injunction to prevent the sale of the assets of the Corporation by the majority stockholders and in connection with this phase of the case a temporary or preliminary injunction did issue. The entire litigation never came to trial, however, and was eventually resolved by settlement. Be that as it may, it is the expense of waging such litigation that is the root of the present controversy. The taxpayer contends that this expense in the amount of $88,968.15 is deductible under either § 162 or § 212 of the Internal Revenue Code of 1954, or, in the alternative, that the expense should be deemed a capital expenditure in connection with the subsequent sale of his 20% interest in the Corporation.

As stated, the litigation in the state court of Indiana was ultimately settled by the parties before trial. The taxpayer suggests, a suggestion which is acquiesced in by the Government, that the settlement was influenced in part, at least, by the fact that his father and brothers announced after the initiation of the litigation that if the taxpayer were successful in stopping the proposed sale of the Corporation's assets, they as the majority stockholders were themselves going to terminate the taxpayer's employment with the Corporation. In any event, by the terms of the settlement agreement the taxpayer was given the first option to purchase the stock held by his father and two brothers for $8,240,000 and, in the event he did not timely exercise his option, then he was to sell his stock to the others for $2,060,000. It subsequently developed that the taxpayer did not exercise his option to purchase the stock belonging to his father and brothers, and accordingly his 20% stock interest was thereafter acquired by them.

■ As indicated, it is the taxpayer's primary position that the $88,968.15 spent by him in connection with his declaratory judgment and injunction litigation is a deductible expense under ei-

ther § 162 or § 212 of the Internal Revenue Code of 1954.

§ 162(a) provides, in part, as follows:

"There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

§ 212 provides, in part, as follows:

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; * * *."

Actually, it matters little whether the taxpayer would come under the provisions of § 162 or § 212. In either event the issue, in a sense at least, is essentially the same; namely, was the litigation expense an ordinary and necessary expense paid by the taxpayer either in (a) carrying on his trade or business or (b) in connection with the management, conservation, or maintenance of property held by him for the production of income. The trial court found that it was not. We agree.

The taxpayer's basic argument is that the litigation expense incurred in connection with the declaratory judgment and injunction proceeding was an expense which was both ordinary and necessary to protect and insure his continued employment with the Corporation and as such was deductible under either §§ 162 or 212. The premise upon which this argument is predicated is from a factual standpoint a bit tenuous. As above indicated, the taxpayer himself concedes that even if he were successful in his litigation and thwarted the proposed sale by his father and two brothers of the assets of the Corporation, he was nonetheless still going to be discharged from his employment by action of his father and brothers who held the controlling interest in the Corporation. Hence, regardless of his personal hopes and expectations, it is difficult to fathom just how the litigation expense could in any logical manner relate to his continued employment with the Corporation.

Be that as it may, from United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570, we learn that it is not the potential consequences on the personal fortunes of the taxpayer that determines whether the expense attendant thereto is deductible under the statutory predecessor of § 212; rather, it is the origin and nature of the claim itself. So, regardless of the motive or purpose for bringing the declaratory judgment action and regardless of what the taxpayer may have hoped would be the ultimate consequences thereof, we must examine the origin and character of the proceeding in the Indiana state court and in this manner determine whether such arose in connection with the taxpayer's profit seeking activities.

Before proceeding to thus analyze the taxpayer's litigation in the Indiana state court, reference should also be made to Woodward v. Commissioner, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577, which presents a factual situation somewhat analogous to the present one. In *Woodward* the majority stockholders of an Iowa corporation voted for perpetual extension of the corporate charter and under Iowa law became obligated to purchase the stock of minority stockholders who had voted against the extension. Such stock was to be purchased at its "real value" and, when the parties could not agree on such real value, an action was then brought in the state court to determine the value of the minority stock interest. The value was thusly fixed, and the majority stockholders then purchased the minority stock interest at the value fixed by the state court.

In connection with the appraisal action there were expenses of over $25,000 for services rendered by various attorneys, accountants and appraisers and the taxpayer claimed this expense as a deduction under § 212, asserting that such was an ordinary and necessary expense

paid for the management, conservation or maintenance of income producing property. The United States Supreme Court held, however, that such expense was a capital expenditure and as such could not be deducted either as ordinary and necessary business expense under § 162 or as an ordinary and necessary expense for the management, conservation or maintenance of income producing property under § 212.

When the instant case is viewed in the light of *Gilmore* and *Woodward*, it becomes evident that the expense incurred by the taxpayer in his Indiana litigation is neither an ordinary and necessary business expense under § 162 nor an ordinary and necessary expense for any of the purposes set forth in § 212. The origin of the taxpayer's claim which formed the basis for his Indiana litigation was the so-called buy and sell agreement entered into by the taxpayer and his father and two brothers. The buy and sell agreement concerned the disposition and acquisition of corporate stock and it certainly was not directly tied into the taxpayer's continued employment with the Corporation. Nor was such litigation expense in any manner necessary to the management, conservation or maintenance of any so-called "property" held by the taxpayer for the production of income. Suffice it to say that, the record considered, we find no error in the trial court's determination that the expense of the Indiana litigation was not a deductible expense under either § 162 or § 212.

 As an alternative position, the taxpayer argues that if it be determined that the aforesaid expense is not deductible either under § 162 or § 212, then such should be deemed a capital expenditure to be added to the basis of the taxpayer's retained stock, which, as above indicated, he has since sold to his father and brothers. In this regard the trial court found that the Indiana litigation and the expense attendant thereto did not involve either the acquisition or the preservation and defense of the taxpayer's 20% stock interest in the Corpora-

tion and accordingly could not be deemed a capital expenditure to be added to the basis of the taxpayer's stock. As the trial court correctly observed, the taxpayer's stock interest was not "in jeopardy" as no one was in anywise "challenging" it. We agree with the trial court's disposition of this phase of the matter.

Judgment affirmed.

## ON REHEARING

 In his petition for rehearing the taxpayer urges that the expenditure with which we are here concerned be held deductible under § 165 of the Internal Revenue Code of 1954. As we read the record, this issue was not raised by the pleadings, was not a part of the pre-trial conference order, was not covered by the judgment of the trial court, and indeed was first advanced in the taxpayer's reply brief. Accordingly, we do not regard this particular matter as being properly before us.

Rehearing denied.