**Gurnee MUNN, Jr.**

v.

**The UNITED STATES.**

No. 76–68.

United States Court of Claims.

Feb. 18, 1972.

Skelton, J., filed opinion concurring in part and dissented in part in which Collins, J., joined.

Daniel Mungall, Jr., Philadelphia, Pa., attorney of record, for plaintiff; Nicholas C. Bozzi, Philadelphia, Pa., of counsel.

Joseph Kovner, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant; Philip R. Miller and E. Alan Moorhouse, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE and DURFEE, Senior Judges, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

LARAMORE, Senior Judge:

This is a Federal income tax case which comes before the court after being tried by our Chief Commissioner Bennett. Following that trial, our commissioner submitted an opinion, findings of fact and recommended conclusion of law pursuant to our Rule 134(h) with which we agree in part and disagree in part. The case involves two issues; the first to be discussed, dealing with deductibility or nondeductibility of legal expenses under section 212 of the Internal Revenue Code of 1954, is the part with which we disagree with our commissioner's opinion and recommended conclusion. However, as for the second issue, we are in total agreement and will, therefore adopt that portion of Chief Commissioner Bennett's recommended opinion.

The circumstances that led to this case are as follows. Plaintiff in this case is the son of Marie Louise Kent

who was the daughter of Rodman Wanamaker. Plaintiff is one of the income beneficiaries of a testamentary trust established by Rodman Wanamaker. That trust consisted of all the shares of the capital stock of John Wanamaker Philadelphia, a retail department store in Philadelphia.

On January 17, 1957, said corporation, John Wanamaker Philadelphia, purchased 10,294 shares of its common stock from the Wanamaker Trust for the sum of $6,999,920. This sales figure when compared against the basis of the stock in the hands of the trustee produced a loss to the trust of $1,235,280. (There is no question as to the holding period nor the nature of the asset and both parties agree that as for the trust the sale was at a long term capital loss.) However, under Pennsylvania law, income beneficiaries are entitled to receive the excess, if any, of the sales price over the so-called "intact value" of the assets, to the extent such excess is attributable to retained earnings. In this case the "intact value" of the stock was the basis in the hands of the *donor* before being transferred to the trust upon the donor's death. Upon the death of John Wanamaker, the stock so transferred acquired a stepped-up basis in the hands of the trust equal to the fair market value of the stock at the time of death or one year later. (Section 1014 of the Internal Revenue Code of 1954). Thus explaining how the stock can be sold by the trust at a loss for Federal income tax purposes and at a gain for state trust law purposes. In any event, the issue in the case does not involve taxability or nontaxability of the distributions instigated by that sale, but, instead involves the deductibility or nondeductibility of the expenses incurred by plaintiff following, and in connection with, that sale.

Following the sale of said stock and by way of the Seventh Account of the Wanamaker Trust, the trustees proposed to distribute $1,022,544 to income beneficiaries as that amount required by Pennsylvania law to be distributed following the sale of part of the corpus of the trust according to the rule of appointment explained earlier. The trustees arrived at this figure by using as the "intact value" of the stock, $5,977,376 thereby producing an amount to be distributed equal to $1,022,544. However, the plaintiff in this case and his sister, along with other income beneficiaries, felt that the "intact value" of the stock was only $4,840,949.08. This value would produce an amount of money allocable to income beneficiaries in the amount of $2,158,970.92. Therefore, the income beneficiaries, including plaintiff's sister, but not plaintiff, filed objections to the Seventh Account and a law suit developed. Also in connection with the Seventh Account, a secondary dispute arose when the estate of Marie Louise Kent filed a claim for 89.337 percent of the portion of the distribution thought to be allocable to plaintiff and his sister.

In that connection it should be pointed out that in the Sixth Account, prior to the Seventh Account (obviously) the estate of Marie Louise Kent had also made claims upon the trustees. Those claims, which were made in conjunction with the estate of Mary Brown Warburton (sister of Rodman Wanamaker), were resisted by plaintiff and his sister. Plaintiff, to see that his rights were fully protected, engaged Richard K. Stevens of the Philadelphia law firm of Stradley, Ronon, Stevens and Young, while his sister's husband, to protect his wife's rights, engaged Cuthbert Latta of the law firm of Barnes, Dechert, Price, Myers and Rhoads, also of Philadelphia.

Following a hearing on the disputed claims pertaining to the Sixth Account, Judge Alfred L. Taxis, Jr., of the Orphans' Court of Montgomery County Commonwealth of Pennsylvania, denied the claim of the Warburton Estate but allowed the claim of the Kent Estate. Exceptions were taken to the decision of Judge Taxis but before further litigation could begin, a settlement was reached and the claims were satisfied. As a result of this settlement, additional

income was distributable to plaintiff and includable in his taxable income for Federal income tax purposes. However, and getting back to the Seventh Account, the success in again resisting the claims of the Kent Estate in connection with the Seventh Account *did not* result in additional taxable income to plaintiff although the total amount distributable was increased.

The amount distributable in the Seventh Account was increased as a result of plaintiff's (and his sister's) successful resistance to the claims of his mother's estate. Furthermore, their success in convincing Judge Taxis that the "intact value" was less than originally established by the trustees enabled plaintiff to receive a larger distribution than was originally scheduled. The above-noted decision by Judge Taxis followed a hearing where plaintiff was again represented by Attorney Stevens and his sister was represented by the same Mr. Latta who represented her in the Sixth Account dispute. Judge Taxis' decision resulted in plaintiff receiving $341,359 from the trustees, no part of which was included as income on plaintiff's Federal income tax return.

Following the above-noted disputes and their resolutions plaintiff paid, in 1959, the law firm of Stradley, Ronan, Stevens and Young, $7,537.18. In 1960, plaintiff paid the same law firm $7,500; both sums being paid for legal services rendered in connection with the disputes over the Sixth and Seventh Accounts. Of the sums noted, $7,518.59 is allocable to the Seventh Account and a like amount is allocable to the Sixth Account. In addition to those amounts paid directly to plaintiff's attorney, plaintiff also agreed with his sister to suffer one-half of her legal expenses incurred in protecting her rights in both the Sixth and Seventh Accounts. That amount paid by plaintiff's sister totalled $40,000; $16,000 being allocable to the Sixth Account and $24,000 allocable to the Seventh. Therefore, plaintiff paid his sister, as legal fees reimbursed pursuant to a valid oral agreement, $8,000 in respect to the Sixth Account and $12,000 in respect to the Seventh. Plaintiff proceeded to deduct the amounts spent for legal fees as for both accounts on his Federal income tax returns for 1959 and 1960.

■ As for the expenses in relation to the Sixth Account, the defendant does not question the deductibility, under section 212(1) of the Internal Revenue Code of 1954, of the legal expenses incurred by plaintiff. However, as to those legal expenses incurred in relation to the Seventh Account, defendant strenuously objects to the deduction of the $7,518.59 paid to his attorney and the $12,000 paid to his sister. The defendant's objections are on the grounds that said expenses of the Seventh Account were related to and in connection with the disposition of a capital asset and, therefore, not deductible under section 212. Plaintiff contends otherwise; he feels that the expenses of counsel are deductible under section 212(1) or section 212(2) but primarily under section 212(2) as an expenditure made for the management, conservation, or protection of income-producing property.

In addition to the legal expenses noted above, plaintiff also paid the law firm of Stradley, Ronon, Stevens and Young, $5,181.48 in 1959 and $5,000 in 1960 for legal services in connection with divorce proceedings involving plaintiff. These expenses were not deducted, in whole or in part, by plaintiff on either his 1959 or 1960 tax return. However, following an audit of those returns, the Internal Revenue Service allowed plaintiff a deduction of $500. Plaintiff now claims, and is supported therein by the testimony of A. Stuard Young, Jr., a partner in the law firm of Stradley, Ronon, Stevens and Young, that one-third of the total expense paid in connection with the divorce ($\frac{1}{3}$ of $10,181.48=$3,393.83) is directly related to tax matters and therefore deductible. This deduction was disputed by defendant but resolved in favor of plaintiff by our Chief Commissioner. The details of that resolution appear as

Part II of the opinion which can be found following our resolution of the issue first noted.

## I

In resolving the parties' differences over the deductibility of the legal expenses incurred in connection with the Seventh Account, section 212 of the Internal Revenue Code must be closely considered. That section provides:

Sec. 212. *Expenses for production of income.*

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax.

Moreover, and as will be explained in detail hereafter, we must also consider the relevancy and consequences of the trust and the action of the trustees. This brings into play section 662(b) which provides:

(b) Character of amounts.—The *amounts determined under subsection (a) shall have the same character in the hands of the beneficiary as in the hands of the estate or trust. For this purpose, the amounts shall be treated as consisting of the same proportion of each class of items entering into the computation of distributable net income as the total of each class bears to the total distributable net income of the estate or trust unless the terms of the governing instrument specifically allocate different classes of income to different beneficiaries. In the application of the preceding sentence, the items of deduction entering into the computation of distributable net income (including the deduction allowed under section 642(c)) shall be* allocated among the items of distributable net income in accordance with regulations prescribed by the Secretary or his delegate. * * *.

Thus our problem is twofold: First we must deal with the deductibility or non-deductibility of legal expenses incurred by plaintiff in terms of whether or not those expenses can be deducted from ordinary income. This brings into play the aforementioned section 212 and all its corresponding definitional problems. Secondly, the matter is complicated by adding the fact that plaintiff is an income beneficiary of a trust and the legal expenses sought to be deducted were incurred by plaintiff following a sale by the trustee of part of the trust corpus. Thus we not only have to wrestle with this case from the standpoint of the deduction of legal expenses, which for us has proven no easy task in the past, *see* United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963), rev'g 154 Ct.Cl. 365 (1961), but we also must consider the consequences of two separate taxable entities and their connection, if any.

To resolve the problem we must first dispose of those items that tend to clutter the path to resolution. First and foremost, it should be understood that the court will treat plaintiff's claim as though it is based primarily on section 212(2) and not also on section 212(1). While this was not the treatment given by Chief Commissioner Bennett, in our opinion plaintiff's case must stand or fall on section 212(2) because section 212(1) will not support the deduction. While this may be an arguable point and worthy of consideration, it is our opinion that Reg. 1.212–1(a)(1)(i) adequately disposes of this contention since it is conceded that the income collected, for which these expenses were incurred, is not required to be included in income for Federal income tax purposes. Moreover, and again differing with the opinion of our commissioner, we are of the opinion that Commissioner v. Burgwin, 277 F.2d 395 (3rd Cir. 1960) is in point on this matter and the distinctions of-

fered by plaintiff are only distinctions without a difference. Furthermore, we are of the opinion that this case presents an even stronger set of circumstances against deduction of the legal expenses under section 212(1) than did *Burgwin*. In *Burgwin*, the taxpayer could not deduct her legal expenses incurred to obtain certain stock which was acquired by the trust in a nontaxable exchange arising out of a tax-free corporate reorganization. The deduction was denied because, among other reasons, the "income" received in the distribution was not taxable. However, in our case, unlike *Burgwin*, the income received will *never* be taxed while in *Burgwin* there existed the possibility that at some future date when, and if, taxpayer sold the stock so acquired, the amount received in excess of her basis therein would be *taxable income*. In addition, in view of a recent decision by the Eighth Circuit in Helgerson v. United States, 426 F.2d 1293 (8th Cir. 1970), with which we tend to agree, the expenses of collecting the proceeds of a disposition of property should not be treated differently than any other expense incident to that disposition. Therefore, the applicability of section 212(1) in this case is even more doubtful.

Note also at this preliminary stage that our main concern is with the Seventh Account and not the Sixth Account. The defendant has conceded that the Sixth Account involved a different set of facts which are not relevant to their position as to the Seventh Account. It is not questioned that the Sixth Account involved a dispute over the distribution of ordinary income which was not produced by the sale of any capital asset. That fact alone has a significant difference which will be explained in detail hereafter. For the present, however, it should be noted that the Sixth Account and the expenses pertaining thereto are no longer questioned by defendant, nor does the treatment afforded those expenses conflict with the treatment urged by defendant for expenses of the Seventh Account.

In reference to the legal expenses pertaining to the Seventh Account heretofore set forth, the plaintiff has gone to great lengths to explain to this court how and why they are deductible under section 212(2). It was not an easy task and plaintiff performed admirably. Nevertheless, it is our opinion that this issue cannot be decided upon the basis urged upon us by plaintiff. That is, plaintiff has labored strenuously to convince this court that this issue should be decided on the assumption that the sale of capital assets by the trust was sufficiently unrelated to the expenses incurred by plaintiff so that those expenses should be treated separately. If we could accept such a proposition there would be no need for the revision of our commissioner's opinion. However, because we are of the opinion that the sale of stock by the trustee was the motivating force to which the expenses in question can be attributed, we must enunciate a different rule than recommended to us by Chief Commissioner Bennett.

The cases principally relied upon by plaintiff developed his case along the line of the "origin and character" test to determine the deductibility or nondeductibility of the legal expense. United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). With that test as his basic premise the argument for deductibility was developed with the assistance of such cases as Frederick E. Rowe, 24 T.C. 382 (1955) and Stella Elkins Tyler, 6 T.C. 135 (1946) to show that when a trust beneficiary incurs legal expenses in an action to settle disputes over the exact portion of distributions to be received, those expenses are incurred for the management, conservation or maintenance of property held for the production of income rather than for acquisition or disposition of property or expenses of defending or perfecting his interest in property. Those cases, along with others of a similar nature, provided a more than adequate basis upon which plaintiff could build his case. However, the one distinguishing element from the cases cited and this plaintiff's case is

that here there was the sale of a capital asset. This factor leads to our opinion that for whatever reason plaintiff felt he was incurring the expenses related to the Seventh Account, they cannot be divorced from the sale of the capital assets. It cannot be disputed that without the sale of stock there would have been no reason to instigate the legal action for collection of the proceeds of that sale. This factor, in our opinion, makes the cases of Woodward v. Commissioner, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970) and United States v. Hilton Hotels, 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970) more in point on the question here presented than those of *Rowe* or *Tyler, supra.*

In the Supreme Court cases that Court settled the question as to deductibility or nondeductibility of legal expenses under section 212 when those expenses are incident to the sale of a capital asset. The question was resolved by their holding that when such expense is ·incurred in the process of acquisition and, in our opinion, also in the instance of its corollary, disposition, the primary purpose test does not apply. If such a connection exists, the expenses simply take the character of the asset to which they relate and in this instance those assets were of a capital nature. Thus the efforts of plaintiff to show that these expenses were for management and conservation of income-producing property cannot prevail over the realities of the situation. It is clear to us that the expenses were incurred as a direct result of the sale of capital assets and were prompted out of a desire to collect the proceeds of that sale. We, therefore, feel the best approach to take in this case is to follow not only the *Woodward* and *Hilton Hotels* cases, but also to recognize the wisdom of the proposition that the distinction between expenses incident to a disposition of property and those incident to collection of the proceeds of the sale is a tenuous distinction in all respects. *See,* Helgerson v. United States, *supra.*

Plaintiff has also argued, as noted earlier in relation to the two parts of our problem, that the sale occurred at the trust level and that, therefore, the expenses incurred by the beneficiary are not sufficiently connected so as to taint the expenses with the color of the sale. While it is true that said sale did occur at the trust level, we feel that the conduit principles of the taxation of trusts are broad enough to effectively characterize the collection expenses of the beneficiaries with the same classification as the asset sold by the trustee. Indeed, because of section 662(b) there would be little doubt as to the characterization of these expenses if the circumstances were slightly altered so that the stock was sold at a price over and above its basis to the trust. If such were the case, plaintiff would ·undoubtedly seek the advantages of section 662(b) so as to characterize the proceeds distributed to him as capital gain. Furthermore, and if such were the case, there would be little doubt that the legal expenses incurred in collecting the full amount to which he would be entitled would be applied in reduction of that gain. Reg. 1.652(b)–3. (On this point *see,* Munson v. McGinnes, 283 F.2d 333 (3rd Cir. 1960).) It is the logical extension of the above described example that the legal expense in this case be treated on equal footing regardless of whether the sale produced a gain or a loss.

We can see no legal distinction when dealing with the classification of legal expenses incurred in relation to the sale of a capital asset between expenses incurred when the sale is at a loss, for tax purposes, as opposed to expenses incurred when the sale is at a gain. We are sure that section 662(b), while appearing to concern itself only with matters of classification of the distributions coming to the beneficiary from the complex trust also addresses itself to corresponding deduction items which are also passed along from the trust to the beneficiaries. For example, under section 662(b), if the trust earned tax-exempt income during the year and thereby in-

curred expenses to earn that income, the conduit principle of section 662(b) would not only *allow* the beneficiary to exclude from his taxable income the tax-exempt income so distributed, but it would also *require* that the direct expenses incurred by the trust in relation to the tax-exempt income, *not be* deducted by the beneficiary. *See,* section 662(b) and Regs. 1.662(b)–1 and 1.652(b)–3. This is in keeping with section 265 for taxpayers in general and furthers the basic principles of the conduit rules in that while there may be two separate entities for tax purposes, there is only one tax to be apportioned between the trust and its beneficiary. Therefore, and in our case, even though the expense incurred was not suffered by the trustee, there is little doubt that if it had been so incurred, it would have been shipped through to the beneficiaries as an expense *directly* related to the sale of capital assets and treated accordingly. Consequently, and in furtherance of the conduit principles of trust taxation, together with respect for the realities and substance of the entire transaction, we refuse to separate this expense from the sale of the Wanamaker stock. In so doing, on this issue, we must hold for the defendant and dismiss plaintiff's petition to the extent noted. This is the opposite result of that arrived at by our commissioner on this issue; however, as to the second major issue in this case, as well as that pertaining to the Sixth Account, we are in full agreement with our commissioner and, therefore, adopt that portion of his recommended opinion which follows as Part II of this opinion.

## II

■ The second issue is whether plaintiff is entitled to deduct more than $500 under section 212(3) of the 1954 Internal Revenue Code with respect to the $10,181.38 he paid in attorneys' fees primarily in connection with his divorce proceedings.

Plaintiff contends that one-third of the $10,181.38 in question is deductible under section 212(3) of the 1954 Internal Revenue Code and Treas.Reg. § 1.212–1 because the sum pertains to services and advice relating to tax matters.

Defendant concedes that $500 of the $10,181.38 in question is allocable to the "determination, collection, or refund of any tax," and thus is deductible. However, defendant argues that as to any sum in excess of $500 plaintiff has not met his burden of proof, and, therefore, his claim must be denied. In the alternative, defendant in its brief urges that no more than 11 percent (or $1,119.95) is deductible.

A. Stuard Young, Jr., a partner in the law firm of Stradley, Ronon, Stevens & Young, who spends between one-third and one-half of his time on tax work, testified that about one-third of the $10,181.38 in question related to tax matters. Mr. Young prepared plaintiff's federal income tax return for 1959, and, although he tried to take all deductions which plaintiff was entitled to, he did not deduct any portion of the sum in question. However, the deductions originally claimed are irrelevant. It is the deductions to which plaintiff is entitled that are controlling.

Mr. Young did not perform the services represented by the amount in controversy. Mr. Young's testimony was based upon a review of his firm's files made when plaintiff's returns were being audited in 1962 and 1963. Unfortunately, Lewis Stevens, who performed the services in question, is deceased and he did not keep time records. Mr. Young did not recall whether he actually discussed the deductibility of the fees at issue with Mr. Stevens in 1959, but Mr. Young testified that normally he would do so and he did recall discussing plaintiff's affairs with Mr. Stevens and was aware of his bill.

The items in the firm's bill in question which Mr. Young identified as being related to tax matters constitute approximately 25 percent of the items listed. Mr. Young made his allocation

of one-third of the sum in question on the basis of the complexity of the items listed in the bill. Defendant concedes the reasonableness of this bill, but disputes the reasonableness of Mr. Young's allocation to tax matters.

Plaintiff offered the bill in question in evidence as well as the law firm's ledger sheets dealing with plaintiff's account for the years 1959 and 1960. While it is impossible to ascertain exactly what portion of the fees in question are allocable to tax matters from an examination of these documents, such an examination indicates that Mr. Young's allocation may be extremely conservative.

Defendant is correct in its position that the burden of proof is upon the plaintiff-taxpayer to establish entitlement to a refund of moneys paid in a suit for refund of taxes. Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L. Ed. 293 (1932); David v. Phinney, 350 F.2d 371 (5th Cir. 1965), cert. denied, 382 U.S. 983, 86 S.Ct. 560, 15 L.Ed.2d 473 (1966). However, plaintiff, in the present case, has adduced evidence which indicates that one-third of the bill in question relates to tax matters. Obviously, some portion of the bill related to tax matters. Defendant, in attempting to rebut plaintiff's evidence, merely asserts that plaintiff's allocation is unreasonable, but offers no evidence to show that Mr. Young made his allocation in bad faith or erroneously and offers no evidence to show that its own allocation is correct. Defendant's evidence merely indicates that all of the fee in question is not allocable to tax matters, which plaintiff concedes, and that some of the services performed on behalf of plaintiff were not of a complex nature.

In Carpenter v. United States, 168 Ct.Cl. 7, 338 F.2d 366 (1964), this court held attorney fees arising out of divorce and separation proceedings which are concerned with the tax consequences flowing from such proceedings are deductible under section 212(3) of the 1954 Internal Revenue Code and Treas.

Reg. § 1.212–1(1). In *Carpenter* the attorney who performed the services relating to the divorce allocated 70 percent of his $10,031.21 fee to services and advice to the tax consequences of the divorce and separation. The attorney made this allocation after reviewing his informal and incomplete time records at the time a claim for refund was filed.

In the present case, the review of the records pertaining to plaintiff's bill was made prior to the time a claim for refund was filed by a partner of the attorney rendering the services in question. In addition, all of the services rendered were not made in connection with divorce and separation proceedings, but all clearly have significant tax consequences flowing therefrom. Thus, the distinguishing characteristic between the present cases and the *Carpenter* case is the percentage of the attorneys' fees allocable to tax matters, which is significantly higher in the *Carpenter* case than in the present case.

In George v. United States, 193 Ct.Cl. 535, 434 F.2d 1336 (1970), as in the instant case, the tax problems were entangled with other matters surrounding a divorce action but the portion of fees reasonably allocable to legal expense for tax advice and counsel was held to be deductible for income tax purposes. What is reasonable turns upon the facts of a given case and must be measured by the best available evidence of the extent and value of the tax advice. Such evidence may be opinion evidence giving an allocation derived from reliable records of services performed. Matthews v. United States, 191 Ct.Cl. 674, 425 F.2d 738 (1970).

For the foregoing reasons, it is concluded that plaintiff has met its burden of proof in establishing his right to deduct one-third of the bill of Stradley, Ronon, Stevens & Young dated August 18, 1959. Furthermore, the court concludes as a matter of law that plaintiff is entitled to recover the amount of tax plus interest wrongly assessed and paid by reason of the defendant's refusal to

allow him to deduct from gross income $15,518.59 in legal expenses for the trustees' Sixth Account, and $2,893.83 in legal expenses pertaining to tax advice as to divorce and other matters. However, as for the $19,518.59 in legal expenses for the Seventh Account, the court concludes that plaintiff is not entitled to deduct those expenses and, therefore, dismisses plaintiff's petition to that extent. The amount of recovery will be determined in subsequent proceedings under Rule 131(c).

SKELTON, Judge (concurring in part and dissenting in part):

I do not agree with that part of the majority opinion on the first issue in which it held that the $19,518.59 the plaintiff paid for attorney fees in connection with the Seventh Account litigation was not deductible by him under Section 212 of the Internal Revenue Code. I agree with the decision of Chief Commissioner Bennett that they were deductible under section 212 for all of the reasons stated in his written opinion.

Here the plaintiff was an income beneficiary of a trust. His principal source of income consisted of distributions from the trust. The amount of these distributions depended on what proportion of the proceeds of the sale of the stock was allocable to income, as opposed to corpus, under the laws of Pennsylvania. That was the basis of plaintiff's suit and the origin of the controversy. The plaintiff undertook by the suit to increase the amount to be distributed to him as income by the trustees and he was successful. Under these circumstances, the requirements of the "origin and character" test as to the deductibility of legal expenses as enunciated by the Supreme Court in United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed. 2d 570 (1963), were fully met. The suit was not connected with the actual sale of the stock, as the trustees had already sold it, but was related solely to the collection of income and to the management, conservation or maintenance of property held for the production of income.

As our chief commissioner pointed out, the plaintiff was not seeking any new title or any new properties. He was already an income beneficiary and was only seeking to enforce his rights to a proper distribution of income under Pennsylvania law. This was certainly an effort "for the production or collection of income" as contemplated by Section 212(1) of the Code, and thereby deductible. The legal expenses here were not incurred as expenses or costs of the disposition of a capital asset, as the majority holds, but rather expenses or costs with reference to the distribution or collection of the proceeds derived from the sale of a capital asset. The sale of the stock was not made by the plaintiff. The trustees had already sold it. The expenses involved here were connected solely with how much would be distributed to plaintiff. Accordingly, the expenses were not of a capital nature and are not required to be capitalized, rather than deducted as an expense.

In Frederick E. Rowe, 24 T.C. 382 (1955), the Tax Court held that legal expenses in a will contest were paid to conserve or maintain property held for the production of income (the interest of a vested remainderman) and were not expenses to acquire, defend or perfect title. This is analogous to the situation here where the legal expenses were incurred to conserve or maintain property held for the production of income (i.e., plaintiff's right to receive proper distributions). For these reasons, plaintiff is entitled to deduct his legal expenses under Section 212(2) of the Code.

In the case of Stella Elkins Tyler, 6 T.C. 135 (1946), the Tax Court held that attorneys' fees paid in connection with a will contest filed to determine the amount of annual income payable to the life tenant taxpayer of a testamentary trust was an expense for the collection of income within the meaning of Section 23(a)(2) of the Internal Revenue Code

of 1939 (the predecessor of Section 212(1) and (2) of the 1954 Code), and deductible. Here, the legal expenses paid by plaintiff increased his distributive share from $1,022,544 to $2,158,970.92. This was not a new or different interest which he acquired, but merely a proper distribution of funds already in the hands of the trustees. The *Tyler* case seems to be directly in point. In both that case and our case, the legal expenses that were incurred were directly connected with income that was distributable to an income beneficiary of a trust. Under the authority of *Tyler*, the plaintiff is entitled to deduct these legal expenses under Section 212(1) of the Code.

The case of Commissioner v. Burgwin, 277 F.2d 395 (3d Cir. 1960) relied on by the government and by the majority, is distinguishable from our case for all of the reasons pointed out by our chief commissioner, with which I agree. I will not repeat them here.

The majority opinion rationalizes that the legal fees here were incurred in connection with the sale or disposition of a capital asset. It appears to have reached this result by reasoning that the money involved came from the sale of the stock previously made by the trustees and had such sale not been made the money would not have been on hand. From this premise, it proceeds by a "conduit" theory to connect plaintiff's legal fees with the sale previously made by the trustees. I think this goes too far. It could just as easily be argued that plaintiff's legal fees were related by the "conduit" theory to the original purchase of the stock by the trustor, because his purchase of it made possible the later sale by the trustees which resulted in the acquisition of the money in their hands for distribution. One argument is about as logical as the other. In my opinion, neither is correct.

Accordingly, I would approve and adopt Chief Commissioner Bennett's opinion as to the first issue and hold that plaintiff is entitled to deduct his le-

gal expenses under Sections 212(1) and 212(2) of the 1954 Code of Internal Revenue.

I concur in the remainder of the majority opinion.

COLLINS, Judge, joins in the foregoing opinion concurring in part and dissenting in part.