489 F.2d 161
 74-1 USTC P 9237
 ESTATE of Joseph M. MEADE, Deceased, First National Bank of
Florence, Executor, and Hazel B. Meade,
Petitioners-Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
William S. and Elizabeth KING, Petitioners-Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
 No. 73-1456.
 United States Court of Appeals, Fifth Circuit.
 Feb. 7, 1974, Rehearing Denied March 5, 1974.
 
 Scott P. Crampton, Asst. Atty. Gen., meyer rothwacks, Donald H. Olson, Attys., Tax Div., U.S. Dept. of Justice, Lee H. Henkel, Jr., Chief Counsel, I.R.S., Washington, D.C., for respondent-appellant.
 J. Gilmer Blackburn, Decatur, Ala., for petitioners-appellees.
 Before GEWIN, AINSWORTH and MORGAN, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 Taxpayers[1] incurred legal expenses in connection with the settlement of a civil antitrust claim that had been assigned to them in pro rata shares as distributees in a corporate liquidation. These cases present the question whether the legal expenses are deductible from ordinary income under section 212 of the Internal Revenue Code of 1954, or whether, under section 263 of the Code, they must be capitalized and offset against long-term capital gain realized by taxpayers from the settlement.
 
 
 2
 The pertinent facts have been fully stipulated. Joseph M. Meade and William S. King were the sole shareholders of the Alabama Wire Company, Inc. In 1963, that corporation and its wholly owned subsidiary employed an Atlanta, Georgia, law firm to advise whether Kaiser Aluminum and Chemical Corporation, in connection with its dealings with Alabama Wire and its subsidiary, had violated the federal antitrust laws. For this initial employment, which ceased in early 1964, the Atlanta firm was paid legal fees by Alabama Wire and its subsidiary.
 
 
 3
 The name of Alabama Wire was thereafter changed to Terrace Corporation, and, on February 15, 1965, the corporation was liquidated. Among the proceeds of the liquidation was the potential claim against Kaiser Aluminum, which, the parties have stipulated, had no ascertainable value at that time. Meade and King, individually, thus acquired ownership of the potential antitrust claim. Meade received a one-third interest in the claim, and King received a two-thirds interest, in accordance with their proportionate ownership of the distributing corporation.[2]
 
 
 4
 Based upon a later opinion of Atlanta counsel, Meade and King, in 1965, retained the firm to pursue the antitrust claim on their personal behalf. An agreement was entered whereby the firm would be paid a monthly retainer fee plus 20 per cent of any amount recovered. When it was subsequently determined that San Francisco counsel should be employed to bring the suit against Kaiser Aluminum in California, the agreement was modified to provide that a retainer of $10,000 would be paid to San Francisco counsel (which amount was to be credited against future retainer charges due Atlanta counsel), and that both counsel would share a 33 per cent participation in any amount recovered.
 
 
 5
 Suit was brought against Kaiser Aluminum in 1965 in the names of Meade and King, individually, as assignees of the cause of action of Alabama Wire and its subsidiary. Treble damages of $9,000,000 were sought. The case was settled in 1966 for $900,000, of which Meade received $300,000, and King, $600,000. On his respective 1966 income tax return, each reported the proceeds of the settlement as additional long-term capital gain from the liquidation of Terrace Corporation.
 
 
 6
 Pursuant to the aforementioned agreement with counsel, Meade and King, in 1966, paid legal fees and litigation expenses totaling $320,993.67.[3] Meade paid one third of that amount, and King paid two thirds. Each claimed the full amount so paid by him as a deduction against ordinary income on his 1966 tax return. The Commissioner disallowed these deductions and treated the entire amount of legal expenses as an offset against the long-term capital gain realized by taxpayers from their antitrust claim. This resulted in an asserted deficiency for the taxable year 1966 in the amount of $29,991.37 for Meade and $65,221.26 for King. Taxpayers filed petitions with the Tax Court for a redetermination of their deficiencies. Upon the consolidation of the cases, the Tax Court held that the attorneys' fees and expenses are properly deductible under section 212(1) as payments for the production of income. 31 CCH Tax Ct. Mem. 935 (1972). This Court has jurisdiction under section 7482 of the Internal Revenue Code of 1954. We reverse the decision of the Tax Court.
 
 
 7
 The stock of Terrace Corporation constituted a capital asset in the hands of the taxpayers of Terrace Corporation. Thus, the proceeds of the liquidation of Terrace Corporation, received in exchange for their Terrace stock, constituted capital gain to taxpayers. Since the antitrust claim was included as part of the proceeds of the liquidation, the fair market value of the claim ordinarily would have entered into the computation-- made at that time-- of taxpayers' capital gain from the liquidation. See section 331 of Internal Revenue Code of 1954. In this instance, however, the potential claim had no ascertainable fair market value at the time of distribution, and no value was assigned to it for purposes of computing taxpayers' capital gain from the liquidation. The liquidation therefore remained an 'open transaction,' and, for tax purposes, the amounts subsequently received from the antitrust claim related back to the initial exchange. See Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 .l.Ed. 1143 (1931); Dennis v. C.I.R., 5 Cir., 1973, 473 F.2d 274, 285; C.I.R. v. Carter, 2 Cir., 1948, 170 F.2d 911; Westover v. Smith, 9 Cir., 1949, 173 F.2d 90. It being undisputed that the Terrace stock was a capital asset in taxpayers' hands, taxpayers and the Commissioner agree that taxpayers had long-term capital gain upon the settlement with Kaiser Aluminum in 1966.
 
 
 8
 This appeal involves the treatment of taxpayers' legal expenses in connection with the settlement of the anti-trust claim. Taxpayers contend that these legal expenses are deductible from ordinary income as expenses incurred 'for the collection of income' under section 212(1). The Commissioner argues that the legal expenses must be capitalized and offset against taxpayers' capital gain because they were incurred in connection with the disposition of a capital asset, the Terrace Corporation stock, within the meaning of section 263.
 
 
 9
 Section 162(a) of the Code permits an individual or corporate taxpayer to deduct all ordinary and necessary expenses paid or incurred in carrying on a trade or business.[4] Section 212 permits an individual not engaged in a trade or business to deduct similar expenses paid or incurred 'for the production or collection of income' and 'for the management, conservation, or maintenance of property held for the production of income.'[5] The concept of capital expenditures, on the other hand, limits the deductions permitted for such gain-seeking expenses under sections 162 and 212.[6] Although section 263, which deals with capital expenditures, explicitly denies a deduction only for certain types of expenditures,[7] it is clear that the section does not provide an exclusive list. C.I.R. v. Lincoln Savings and Loan Association, 403 U,.s, 345, 358, 91 S.Ct. 1893, 1901, 29 L.Ed.2d 519 (1971). The limits of nondeductibility for capital expenditures are found in the case law. Here, we are guided by fundamental doctrine recently noted by the Supreme Court in Woodward v. C.I.R., 397 U.S. 572, 575, 90 S.Ct. 1302, 1305, 25 L.Ed.2d 577 (1970): 'It has long been recognized, as a general matter, that costs incurred in the acquisition or disposition of a capital asset are to be treated as capital expenditures.'[8] More specifically, expenses incurred by shareholders in effecting the liquidation of their corporation-- our concern in this case-- ordinarily constitute capital expenditures, which enter into the computation of gain or loss arising from the distribution. See, e.g., Third National Bank v. United States, 6 Cir., 1970, 427 F.2d 343; Helgerson v. United States, 8 Cir., 1970, 426 F.2d 1293; Estate of McGlothlin v. C.I.R., 5 Cir., 1967, 370 F.2d 729.
 
 
 10
 The Supreme Court's recent decisions in Woodward v. C.I.R., supra, and its companion case, United States v. Hilton Hotels Corporation, 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970), shed further light on the principles applicable to this appeal. In those cases, the Court unanimously held that expenses of litigation that arise out of the acquisition of a capital asset are capital expenses. The cases presented two substantially identical situations. Taxpayers incurred legal expenses in appraisal proceedings in connection with a purchase of dissenting shareholders' stock that was required under local law. Taxpayers argued that the 'primary purpose' test should be applied in determining the deductibility of the costs of acquiring or disposing of property. That rule, developed in the context of expenditures to defend or perfect title to property, provides that such expenditures are capital in nature only where the taxpayer's primary purpose in incurring them is to defend or perfect title. See, e.g., Treas.Reg. on Income Tax 1.263(a)-2(c); Rassenfoss v. C.I.R., 7 Cir., 1946, 158 F.2d 764; Industrial Aggregate Co. v. United States, 8 Cir., 1960, 284 F.2d 639, 645. The primary purpose of their expenditures in the appraisal proceedings, taxpayers argued, related not to the acquisition of title, but to the price to be paid for the stock, and, therefore, their expenditures should not be characterized as acquisition costs.
 
 
 11
 In rejecting the taxpayers' claims in Woodward and Hilton Hotels, the Supreme Court found the primary purpose test inapplicable to the situations before it: 'A test based upon the taxpayer's 'purpose' in undertaking or defending a particular piece of litigation would encourage resort to formalisms and artificial distinctions.' Woodward v. C.I.R., 397 U.S. at 577, 90 S.Ct. at 1306. Instead, the Court adopted the 'origin' test, choosing to consider the origin and character of the claim for which the expenditures were made. On the basis of that test, the Court held that the determination of a purchase price by litigation is clearly part of the process of acquisition and should be treated as part of the cost of the stock that the taxpayers acquired. In so holding, the Court noted that 'ancillary expenses incurred in acquiring or disposing of an asset are as much part of the cost of that asset as is the price paid for it.' Woodward v. C.I.R., 397 U.S. at 576, 90 S.Ct. at 1305.[9] We find the Court's reasoning compelling in its application to the facts before us.
 
 
 12
 As we noted above, the exchange in the liquidation of taxpayers' stock for the Terrace assets resulted in capital gain treatment to the taxpayers. The exchange remained an open transaction until the proceeds of the antitrust claim were collected by taxpayers. Since the open transaction event qualified for capital gain treatment, the amounts ultimately collected from the settlement do also. In effect, the proceeds of the settlement constituted additional consideration for taxpayers' stock in Terrace Corporation. While taxpayers have agreed with the Commissioner that the liquidation should be kept open in order to include the proceeds of the settlement as capital gains, taxpayers seek to close that transaction for the purpose of characterizing the legal expenses involved as deductible expenses for the collection of income. The Supreme Court's 'origin of the claim' test prevents us from agreeing with taxpayers.
 
 
 13
 The 'origin' test was first set forth by the Court in United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). There it was held that legal expenses incurred by a taxpayer in defending a divorce suit were nondeductible personal expenses even though taxpayers' securities holdings, and possibly his business reputation, would be affected by the outcome of the case. The Court sustained the Government's position that deductibility depended on the 'origin and nature' of the claim against the taxpayer, and found that the claim arose out of the personal relationship of marriage. The Court stated the proper test as follows: 'The origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controllong basic test of whether the expense was 'business' or 'personal' and hence whether it is deductible or not under 23(a)(2) (section 212 of the 1954 Code).' 372 U.S. at 49, 83 S.Ct. at 629. It was this test that the Court adopted in Woodward in determining that the origin of the particular litigation involved was found in the process of the acquisition of a capital asset, and that therefore the expenses of the litigation were nondeductible capital expenses.
 
 
 14
 Although there is admittedly a distinction between the two situations we think it clear that the Court adopted this test, not only with respect to the acquisition of a capital asset, but also for determining whether legal expenses are incurred in the process of disposition of property. See Woodward v. C.I.R., 397 U.S. at 576, 578 n. 7, 90 S.Ct. at 1305, 1306 n. 7; Third National Bank v. United States, 6 Cir., 1970, 427 F.2d 343, 344; Munn v. United States, 1972, 455 F.2d 1028, 1033, 197 Ct.Cl. 233. Substantially the same problems arise in each determination. In both the disposition and acquisition of property, a determination must be made of the tax consequences of monetary outlays in connection with contesting the value of certain capital assets. The uncertainty and difficulty of considering the taxpayer's motive in incurring expenses are present in both situations. For the deductibility of payments to depend upon such subjective considerations would, as the Court noted in Woodward, encourage resort to 'formalisms and artificial distinctions.'
 
 
 15
 Applying the 'origin' standard to the facts before us, we are convinced that the antitrust claim against Kaiser Aluminum-- as it rested in the hands of these taxpayers-- had its origin in the process of the disposition of their stock in Terrace Corporation. The claim was part of the Terrace assets received by taxpayers in the liquidation of the corporation, and taxpayers' disposition of their stock was an open transaction for purposes of the collection of the proceeds of the settlement. Thus, the valuation of the claim against Kaiser Aluminum was vital to the disposition of taxpayers' stock, and the litigation necessary for this determination was an integral part of the overall transaction. Hence, the expenses incurred in the litigation that led to the settlement are properly treated as part of the cost of the stock that the taxpayers exchanged in the liquidation.[10]
 
 
 16
 Taxpayers have directed our attention to two circuit court decisions, Naylor v. C.I.R., 5 Cir., 1953, 203 F.2d 346, and C.I.R. v. Doering, 2 Cir., 1964, 335 F.2d 738, which presented problems similar to the one before us. In Naylor, taxpayer gave an aption to purchase certain stock, which was a capital asset in his hands, at a price based on the stock's net asset value shown on the books of the company on a certain date. The purchaser exercised his option, but thereafter a dispute arose over the valuation, and taxpayer hired an attorney to negotiate with the purchaser concerning the value of the shares. Taxpayer's expenses in connection with the valuation were held deductible under the predecessor of section 212(1).
 
 
 17
 Doering involved a fact pattern slightly different from Naylor. In Doering, taxpayer owned stock in Argosy Pictures Corporation, which had contracted to produce certain films for distribution by republic Pictures Corporation. A dispute arose between the corporations as to the amount of Argosy's participation in the proceeds under the contract, but Argosy liquidated before a settlement was effected. Because the claim had no ascertainable fair market value at the time, the transaction remained 'open' for tax purposes. In redemption of his stock, a capital asset, taxpayer received cash and a pro rata portion of Argosy's claim against Republic. Thereafter, in effecting a settlement of the dispute over the terms of Argosy's contract with Republic, taxpayer incurred legal expenses. The full Tax Court, four judges dissenting, allowed him to deduct the expenses under section 212 because they were incurred for the 'collection of income.' A divided panel of the Second Circuit affirmed.
 
 
 18
 We think that the Naylor and Doering decisions have been considerably eroded by Woodward and Hilton Hotels, which arrived at results different from Naylor and Doering, though all four cases presented similar fact situations. See Helgerson v. United States, 8 Cir., 1970, 426 F.2d 1293, 1298. See generally 4A Mertens, Law of Federal Income Taxation 25A.15; B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders 11-82 (1971). Naylor and Doering are, however, distinguishable from the Supreme Court decisions and from the cases before us.
 
 
 19
 We see Naylor as holding that if a disposition of a capital asset has been consummated, and subsequent controversy concerns no more than enforcement of the terms of the agreement, then the problem is one of collection of income under section 212. See Munson v. McGinnes, 3 Cir., 1960, 283 F.2d 333, 335, cert. denied, 364 U.S. 880, 81 S.Ct. 171, 5 L.Ed.2d 103. As the Court noted in Naylor, 'the situation called for the services of an attorney to collect the proceeds of a sale of a capital asset. Petitioner's attorney was employed after an enforceable contract of sale existed.' 203 F.2d at 347. Similarly, Doering involved legal expenses that were found to be a cost of collecting sums due the taxpayer under 'a fully executed and enforceable contract.' 39 T.C. 647, 650.
 
 
 20
 In Woodward and Hilton Hotels, on the other hand, the problem was treated as one of the establishment of a purchase price in the acquisition of a capital asset. The transactions there were clearly considered incomplete until the litigation to set a purchase price had concluded. 'The whole process of acquisition required both legal operations-- fixing the price, and conveying title to the (stock) . . ..' United States v. Hilton Hotels Corporation, 397 U.S. at 584, 90 S.Ct. at 1309. So also in the cases before us, we are concerned with transactions not consummated until the claim against Kaiser Aluminum had been settled. Establishment of the value of the antitrust claim was a contingency on which the finality of taxpayers' stock disposition depended. By contrast, in Naylor and Doering, fully enforceable agreements existed, and litigation involved only the interpretation and enforcement of those agreements. Accordingly, the legal expenses involved in those cases may more easily fit within the concept of expenses incurred for the collection of income than taxpayers' expenses in the cases before us.[11]
 
 
 21
 Reversed.
 
 
 
 [1]
 Taxpayers are the Estate of Joseph M. Meade, deceased, and Hazel B. Meade, his widow, and William S. King and Elizabeth King, husband and wife. After this litigation was initiated, Joseph Meade died, and his estate was substituted as a party in this proceeding. Taxpayers' wives are parties because joint income tax returns were filed in 1966
 As used herein, the term taxpayers refers to Joseph M. Meade and William S. King.
 
 
 [2]
 The record indicates that on the day following the liquidation of Terrace Corporation taxpayers transferred their respective interests in the antitrust claim to a partnership owned by them in the same proportions. The partnership filed a U.S. Partnership Return of Income for the taxable year 1966. Because in these circumstances the partnership was a mere conduit for tax purposes, its existence is not material to our analysis or decision in this case. See section 702(b) of the Internal Revenue Code of 1954
 
 
 [3]
 Meade and King paid from a joint bank account a total of $56,326.67 for monthly advances for legal fees and expenses. The remainder of the fees previously agreed to, which amounted to $264,667, was paid following settlement of the suit
 
 
 [4]
 Section 162(a), 26 U.S.C. 162(a), provides in pertinent part:
 
 
 [162]
 Trade or business expenses (a) In general.-- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business
 
 
 [5]
 Section 212, 26 U.S.C. 212, provides:
 
 
 [212]
 Expenses for production of income In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax
 
 
 [6]
 For purposes of this distinction between capital expenses and ordinary expenses, sections 162 and 212 are construed in the same manner, with the exception that section 212 permits deductions 'for the ordinary and necessary expenses of nonbusiness profitmaking activities.' Woodward v. C.I.R., 397 U.S. 572, 575 n. 3, 90 S.Ct. 1302, 1305 n. 3, 25 L.Ed.2d 577 (1970)
 
 
 [7]
 Section 263, 26 U.S.C. 263, provides in part:
 
 
 [263]
 Capital expenditures (a) General rule.-- No deduction shall be allowed for--
 (1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate . . ..
 
 
 [8]
 See, e.g., Spreckels v. Helvering, 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073 (1942); Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 (1938); Helgerson v. United States, 8 Cir., 1970, 426 F.2d 1293, 1296; Spangler v. C.I.R., 9 Cir., 1963, 323 F.2d 913, 918-919; Alphaco, Inc. v. Nelson, 7 Cir., 1967, 385 F.2d 244; Treas.Regs. on Income Tax 1.263(a)-2(e). See also United States v. Mississippi Chemical Corp., 405 U.S. 298, 92 S.Ct. 908, 31 L.Ed.2d 217 (1972); C.I.R. v. Lincoln Savings & Loan Association, 403 U.S. 345, 91 S.Ct. 1893, 29 L.Ed.2d 519 (1971); Pacific Transport Co. v. C.I.R., 9 Cir., 1973, 483 F.2d 209. The Commissioner acknowledges, however, that not all expenses attributable to capital assets are necessarily required to capital italized, see Treas.Regs. on Income Tax 1.212-1(b); nor are they necessarily deductible, see Treas.Regs. on Income Tax 1.212-1(k) and (n), and 1.263(a)-2
 
 
 [9]
 The chief distinction between Woodward and Hilton Hotels was that in latter case, under local law, taxpayers had received title to the dissenters' stock prior to the appraisal litigation, whereas in Woodward title passed after the litigation. The Court found the distinction to be of no consequence. United States v. Hilton Hotels Corporation, 397 U.S. at 584, 90 S.Ct. at 1309
 
 
 [10]
 The result we reach in this appeal is in harmony with several decisions rendered prior to the Woodward and Hilton Hotels cases. See, e.g., Munson v. McGinnes, 3 Cir., 1960, 283 F.2d 333, cert. denied, 364 U.S. 880, 81 S.Ct. 171, 5 L.Ed.2d 103; Spangler v. Commissioner, 9 Cir., 1963, 323 F.2d 913. See also United States v. Morton, 8 Cir., 1968, 387 F.2d 441; Alphaco, Inc. v. Nelson, 7 Cir., 1967, 385 F.2d 244; Towanda Textiles, Inc. v United States, 1960, 180 F.Supp. 373, 377, 149 Ct.Cl. 123
 Our decision is also strongly supported by the case law subsequent to Woodward and Hilton Hotels. See, e.g., Helgerson v. United States, ,8 Cir., 1970, 426 F.2d 1293, 1297-1298; Third National Bank v. United States, 6 Cir., 1970, 427 F.2d 343; Anchor Coupling Co. v. United States, 7 Cir., 1970, 427 F.2d 429, cert. denied, 401 U.S. 908, 91 S.Ct. 866, 27 L.Ed.2d 806 (1971); Ransburg v. United States, 10 Cir., 1971, 440 F.2d 1140; Munn v. United States, 1972, 455 F.2d 1028, 197 Ct.Cl. 233; Clark Oil and Refining Corp. v. United States, 7 Cir., 1973, 473 F.2d 1217. See also 22 J. Public Law 233 (1973).
 
 
 [11]
 Taxpayers also place some reliance on Petschek v. United States, 2 Cir., 1964, 335 F.2d 734, a case that the Supreme Court in Woodward referred to as 'a borderline case (under the origin test) of whether legal expenses were incurred in the disposition of property.' 397 U.S. at 578 n. 7, 90 S.Ct. at 1306 n. 7. In petschek, taxpayer was permitted to deduct legal fees expended in prosecuting a claim for compensation against funds created by foreign governments after they had confiscated corporations in which taxpayer held stock. We think that case must be distinguished from the cases at bar because there taxpayer's property 'had been confiscated long before the fees were paid and (taxpayer's) efforts were directed toward reimbursement rather than to recovery of the property itself . . ..' 335 F.2d at 735. Consequently, under the 'orgin' test the legal expenditures are much less susceptible of relation back to the disposition of property-- the confiscation-- than are the fees incurred by taxpayers in the cases before us. See 335 F.2d at 736-737