H. C. Naylor, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 29349.   Promulgated December 7, 1951.

*Alex P. Gaines, Esq.,* and *John E. Simpson, Esq.,* for the petitioner.
*William W. Oliver, Esq.,* for the respondent.

## OPINION.

DISNEY, *Judge:* The fee of $28,000 paid to counsel, the reasonableness of which is not in controversy, is alleged by petitioner to be deductible as a nonbusiness expense under the provisions of section 23 (a) (2) of the Internal Revenue Code. Respondent insists that, as held by him in determining the deficiency, the amount constitutes a selling expense and, therefore, must be used as an offset in computing gain on the sale.

The parties differ widely on the basis for the negotiations conducted by petitioner's counsel, the purpose of his employment and the legal effect of the results obtained.

Petitioner asserts in his opening brief that the exercise by Interstate of the option converted the option agreement into an executed sales contract, under which he was obligated to deliver the stock in accordance with its terms, hence the sale was completed when the option was exercised, and that the negotiations were conducted, not to bring about a sale, but solely for the purpose of forestalling an injustice and obtaining a fair price. He alleges in his reply brief that counsel was engaged to obtain the price to which he was entitled under the contract of sale. Respondent's view is in effect that, absent performance at the book value specified in the option agreement, the contract which came into existence when the option was exercised remained executory, and that the negotiations resulted in a new sale at a different price, in connection with which the old contract was, in effect, rescinded.

There is no essential difference between the parties as to the facts involved. The difference involved is in what the two parties to the option had in mind. After careful study of the situation presented, we are of the opinion that it can be viewed in either of two ways: (a) That without regard to the option agreement the attorney was employed to secure for the stock more money than offered by Interstate; or (b) that he was employed to urge a contention, as to the interpretation of the expression "net asset value thereof as shown by the books," in the option agreement, which would if sustained obtain for petitioner his proper share of the actual net asset value as set by the actual sale by Interstate. Either view leads to the same result. If the attorney was merely trying to obtain more money for the property he was acting in essence as any broker would do, and though the petitioner now contends that he was obligated to deliver the stock so that sale was completed when the option was exercised, it is entirely clear that the attorney did not so concede in his negotiations with Interstate and treated any sale as depending upon whether a price could be agreed upon, as common in sales by brokers. Under our first view of the matter therefore, the fee paid to the attorney has the same essential characteristics as a brokerage fee or selling commission. As such it is an expense of sale and the amount is an offset against selling price. *Spreckels* v. *Commissioner*, 315 U. S. 626; *Don A. Davis*, 4 T. C. 329, affd. 151 F. 2d 441; *James M. Straub*, 13 T. C. 288. On the other hand, under our second view of the matter, the attorney was employed to make and made a contention as to interpretation of the crucial point of the option agreement. The right of the optionee depended on such interpretation. It had no right to purchase except as provided by the option. Thus, whether the sale was to be made is seen to have depended upon the interpretation of the agreement of option. We see some reason in the contentions of both petitioner and the optionee, as to the meaning of "net asset value thereof as shown by the books * * *." The services of the attorney urging an interpretation thereof, to effect the sale, appears as an integral part of the process of sale, which would not have taken place without either agreement on the interpretation, or compromise. Amounts paid in compromise partake of the nature of the claim involved, *Margery K. Megargel*, 3 T. C. 238, and payments for services of an attorney taking part in a dispute over terms of purchase, set in an option agreement, are not in essence different from other expenses of the sale, which depended upon the result of such services. Petitioner on reply brief refers to his claim as one for the price to which he was entitled "as he interpreted the provisions of the contract," and says: "It was an expense incurred in the collection of the proceeds of a sale which was already negotiated and legally binding on both parties * * *." Thus, he agrees that the $28,000

is an expense having a connection with the sale; and, in our opinion, he is in error in the idea that it was already negotiated and legally binding on both parties, if he means, as he appears to mean, that the sale was so complete when Interstate exercised the option that he was in any event required by the option agreement to deliver title so that the attorney merely served to collect the purchase price. Sale and delivery of title was not required by the option agreement, except for a price therein provided for. The provision in that respect was not only, in our opinion, somewhat ambiguous but it was actually treated as so by the petitioner and his counsel. Therefore, interpretation or, in the absence thereof, compromise (or of course resort to either arbitration or suit for specific performance by Interstate) was necessary before a sale could be completed. We think it obvious, therefore, that even if the attorney was not employed, regardless of the contract, to bargain for a higher purchase price than offered, as a broker might, he was employed to interpret the terms of the contract and bargain in that respect, and that in either event the services being essentially incidental and necessary to the consummation of passage of title were expenses of sale and deductible only as offsetting selling price under the above cases.

Petitioner cites *Walter S. Heller*, 2 T. C. 371, affd. 147 F. 2d 376, as requiring a conclusion contrary to that reached by us. In that case the taxpayer, a minority stockholder who refused to accept stock in a reorganization, sued under a state statute to recover the cash value of his stock and incurred a counsel fee in a successful prosecution of the suit. The issue before us there was the narrow question of whether the fee was paid in defense of title and therefore was a capital expenditure, as contended by the Commissioner, or a nonbusiness expense under section 23 (a) (2), Internal Revenue Code. The proceeding in Court involved the right of Heller to receive cash for his stock and a determination of the amount thereof. No contention was made, as here, that the fee was a selling expense and that question was not decided. There was an acknowledged contractual right here to receive at least $440,000 upon sale and the fee was paid, as pointed out, to procure for the property an amount in excess thereof. The California statute required the minority stockholder dissenting in a proposed reorganization to deliver his stock and left him merely a right to sue for the value thereof. Section 369 of the California Civil Code. Obviously, therefore, the sale was by force of statute consummated and the dissenting stockholder had nothing left except a suit for purchase price. Here the sale, in our view, was not consummated until the parties either agreed upon an interpretation of an ambiguous contract or compromised on the question.

In *Carl W. Braznell*, 16 T. C. 503, another case relied upon by petitioner, the payment was for damages awarded in a suit for failure to

carry out a sale of real property after the broker, the plaintiff in the action, had obtained a buyer. The amount was paid, not in connection with a consummated sale, as here, but for refusing to complete a sale.

*Pierce Estates, Inc.*, 3 T. C. 875, involved legal expenses incurred in a suit for payment out of oil and other minerals produced on leases. The litigation was compromised after the Court decided, as a matter of law, the gas was a mineral, which interpretation settled the question of whether the taxpayer was entitled to receive income under the lease. No sale of capital assets was involved.

The suit in *Stella Elkins Tyler*, 6 T. C. 135, in connection with which the attorneys' fee there in controversy was paid, was instituted to construe a will to determine whether her interest therein was one-sixth, as she alleged, or less, as others contended. Such facts are unlike those involved here.

We conclude and hold that no error was committed by respondent in treating the fee as an offset against the amount received for the stock.

This conclusion renders it unnecessary to pass upon respondent's alternative contention.

To reflect adjustments agreed to in the stipulation of facts

*Decision will be entered under Rule 50.*

Reviewed by the Court.

ARUNDELL and BLACK, *JJ.*, dissent.