**ESTATE of Richard BAIER et al., Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 75–1609.

United States Court of Appeals, Third Circuit.

Argued Jan. 9, 1976.

Decided April 6, 1976.

---

Harold Druse, Plainfield, N. J., for appellants.

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Jonathan S. Cohen, and Stephen M. Gelber, Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before VAN DUSEN, ADAMS and WEIS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

The sole question presented on this appeal from the Tax Court is whether certain legal expenses incurred by the taxpayer during calendar years 1969–1971 qualify as an ordinary expense under § 212 of the Internal Revenue Code of 1954,[1] or whether those expenses must be treated as capital expenditures. The Tax Court held that the expenses have their origin in the disposition of a capital asset and, therefore, must be used to offset the realized capital gains. *Baier v. Commissioner of Internal Revenue*, 63 T.C. 513 (1975). We affirm.

Richard Baier was first employed by American Smelting and Refining Company (American) in 1933. In 1953, he became the chief engineer in a division of American's central research department. In conjunction with his promotion to this position, Baier signed an employment contract which contained the following provisions:

"7. [Employee] agrees that he will forthwith disclose and assign to the Company all discoveries, processes and inventions made or conceived in whole or in part by him . . . during his employment, relative to or useful in any business carried on by the Company . . . and the said discoveries, processes and inventions shall become and remain the property of the Company . . . . Upon request of the Company . . . the [employee] agrees to make application . . . for letters patent of the United States and of any other countries where obtainable, on said discoveries, processes and inventions, and forthwith to assign all such applications

(1) for the production or collection of income;
(2) for the management, conservation, or maintenance of property held for the production of income . . . ."

---

1. 26 U.S.C. § 212 provides:
"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

and the letters patent thereon to the Company . . . .

"8. Under the provisions of the Executive Committee Circular No. 605 . . employees of the Company making inventions in the course of their employment useful in the business of the Company, may derive certain benefits therefrom in accordance with the terms and conditions in said circular set forth; but the granting of such benefits is discretionary with the Company and the provisions of such circular are subject to withdrawal or change without notice."

App. at 54a–55a. Circular No. 605, incorporated by reference into the contract, provided that, if American should grant to any person or corporation other than itself the right to make, use or vend the discovery, process, or invention, then the company would give to the employee or employees responsible a 15% share in the net proceeds realized.

In August 1961, Baier and a co-inventor reduced to practice a method and apparatus for melting copper which had a tremendous commercial potential. In May 1962, American amended Circular No. 605 by issuing Executive Committee Circular Letter No. 995. Circular No. 995 was identical to Circular No. 605 in all material respects except that the payments made to employees under its terms would be limited to $20,000 per year and would be paid only while the employee was actively employed by American. Baier was asked to sign a new employment contract incorporating Circular No. 995, but he refused.

In accordance with the terms of the 1953 employment contract, Baier applied for a patent to cover the method and apparatus for melting copper, and assigned this application to American. Beginning in November 1962, American licensed the invention to various unrelated corporations.

A dispute arose between American and Baier over whether the payments to Baier for the invention were to be determined under the terms of Circular No. 605 or under the terms of Circular No. 995. The licensing fees realized by American were of such magnitude that the difference to Baier was extremely large. To protect his interests, Baier retained legal counsel and then commenced suit. In February 1964, a settlement was reached, the terms of which were substantially more favorable to Baier than the terms of Circular No. 995.

The payments received from American have been properly reported by Baier as long-term capital gains. See Treas.Reg. § 1.1235–1(c)(2). His legal counsel was retained on a contingent fee basis, entitling such counsel to a percentage of the payments made by American to Baier. Payments were made by Baier to his attorney in the years 1969, 1970 and 1971 and were claimed as an ordinary deduction for each year under 26 U.S.C. § 212. The Commissioner disallowed these payments as ordinary deductions and recharacterized them as capital expenditures, and ruled on the basis of 26 U.S.C. § 263 [2] that they were not deductible. Accordingly, the Commissioner assessed a deficiency for the years 1969–1971. Baier petitioned the Tax Court for a redetermination of the deficiencies. After the Tax Court upheld the Commissioner, Baier filed a timely notice of appeal.

Baier contends that he incurred legal fees to enforce a fully executed contract, complete as to its terms, and not incident to the disposition of a capital asset (the invention underlying the patent). "Litigation was required not to fill in any missing terms [such as price] but to enforce the contract as

---

**2.** 26 U.S.C. § 263 provides:

"(a) *General rule.*—No deduction shall be allowed for—

(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. . . ."

This section has consistently been interpreted as requiring the capitalization of the costs incident to the acquisition or disposition of a capital asset. See *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 12–19, 94 S.Ct. 2757, 2764–2767, 41 L.Ed.2d 535, 544–548 (1974); *Woodward v. Commissioner*, 397 U.S. 572, 575, 90 S.Ct. 1302, 1304, 25 L.Ed.2d 577, 581 (1970); *United States v. General Bancshares Corp.*, 388 F.2d 184, 187 (8th Cir. 1968).

written" (taxpayer's brief at p. 31). The Tax Court found that the terms of the contract were not final with respect to the invention disposition price, and therefore the legal expenses were incurred as the cost of setting that price. See *United States v. Hilton Hotels Corp.*, 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970). We believe it is unnecessary in this case to resolve the dispute over the construction of the employment contract.

▮▮▮ It is clear that § 263 modifies § 212. See 26 U.S.C. § 211; *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 17, 94 S.Ct. 2757, 2759, 41 L.Ed.2d 535, 538 (1974). The test for determining what a § 263 capital expenditure is has been described by the Supreme Court in *Woodward v. Commissioner*, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970), and *United States v. Hilton Hotels Corp., supra:*

"[U]ncertainty is not called for in applying the regulation that makes the 'cost of acquisition' of a capital asset a capital expense. In our view application of [that] regulation to litigation expenses involves the simpler inquiry whether the origin of the claim litigated is in the process of acquisition itself."

*Woodward, supra* at 577, 90 S.Ct. at 1306, 25 L.Ed.2d at 583.

"The whole process of acquisition required both legal operations—fixing the price, and conveying title to the property—and we cannot see why the order in which these operations occurred . . .

should make any difference in the characterization of the expenses . . . ."

*Hilton Hotels, supra* at 584, 90 S.Ct. at 1309, 25 L.Ed.2d at 588. We are satisfied that the "origin of the claim test" applies to expenses incident to the disposition of property, as well as to the acquisition of property. See *Munn v. United States*, 455 F.2d 1028 (Ct.Cl.1972); *Helgerson v. United States*, 426 F.2d 1293 (8th Cir. 1970). The origin of the litigation expenses at issue in this case was the disposition of a capital asset—the patent.[3] We hold that the costs of disposition include legal fees incurred incident to a dispute over what the terms of the disposition are. See *Munn, supra* at 1032.

To make the federal tax treatment of legal expenses turn on the underlying merits of the dispute giving rise to the legal expenses in a case such as this would involve the Commissioner in an area of the law far from his field of expertise. We can perceive no reason in law or policy to make the deductibility of legal expenses dependent upon the correct interpretation of a contract such as this involving the application of numerous rules of construction, see Restatement of Contracts §§ 235 and 236 (1932); Restatement of Contracts §§ 228 and 229 (Tent.Draft No. 5, 1970). See *Galewitz v. Commissioner of Internal Revenue*, 411 F.2d 1374, 1377–78 (2d Cir. 1969).

▮▮▮ Appellants argue, however, that the Commissioner's interpretation of § 263 to encompass the legal fees involved in this

---

**3.** See 26 U.S.C. § 1235(a); Treas.Reg. § 1.1235–1(c)(2), which provides:

"(2) Payments to an employee. Payments received by an employee as compensation for services rendered as an employee under an employment contract requiring the employee to transfer to the employer the rights to any invention by such employee are not attributable to a transfer to which section 1235 applies. However, whether payments received by an employee from his employer (under an employment contract or otherwise) are attributable to the transfer by the employee of all substantial rights to a patent (or an undivided interest therein) or are compensation for services rendered the employer by the employee is a question of fact. In determining which is the case, consideration shall be given not only to all the

facts and circumstances of the employment relationship but also to whether the amount of such payments depends upon the production, sale, or use by, or the value to, the employer of the patent rights transferred by the employee. If it is determined that payments are attributable to the transfer of patent rights, and all other requirements under section 1235 are met, such payments shall be treated as proceeds derived from the sale of a patent."

It is agreed by both parties that this is a case to which § 1235 does apply. The regulation makes clear that this is only true when the money received is not "compensation for services rendered" but rather is "attributable to the transfer by the employee of all substantial rights to a patent."

case ignores the language and purpose of Treas.Reg. § 1.212–1(b). The text of this regulation is set out in the margin.[4] Reading the regulation as a whole, we are convinced that the regulation is not inconsistent with the Commissioner's position. We understand the regulation to mean that expenses which would be deductible from ordinary income if they were incurred in the maintenance or management of property ordinarily held for the production of income are deductible, even though the expenses were incurred in the management or maintenance of property not in fact producing ordinary income and not purchased for the purpose of producing ordinary income. The function of the regulation is to make unnecessary any investigation into the taxpayer's subjective purpose in procuring any property or in incurring any expense. We have concluded that the regulation was not intended to overcome the injunction of § 263 that capital expenditures are not deductible expenses.

The decision of the Tax Court will be affirmed.

---

4. Treas.Reg. § 1.212–1(b) provides:

"(b) The term 'income' for the purpose of section 212 includes not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property. For example, if defaulted bonds, the interest from which if received would be includible in income, are purchased with the expectation of realizing capital gain on their resale, even though no current yield thereon is anticipated, ordinary and necessary expenses thereafter paid or incurred in connection with such bonds are deductible. Similarly, ordinary and neces-

sary expenses paid or incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. Expenses paid or incurred in managing, conserving, or maintaining property held for investment may be deductible under section 212 even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto."