**John L. LOCKE and Irene F. Locke,**
**Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL**
**REVENUE, Respondent-Appellee.**

No. 76–2221.

United States Court of Appeals,
Ninth Circuit.

Jan. 27, 1978.

---

**664**

Dwight J. Drake (argued), Seattle, Wash., for petitioners.

Wynette J. Hewett, U. S. Dept. of Justice, Washington, D. C., for respondent.

Before KOELSCH and ELY, Circuit Judges, and VAN PELT,* Senior District Judge.

VAN PELT, Senior District Judge:

This is an appeal from a Tax Court decision[1] sustaining a finding by the Commissioner of Internal Revenue that John L. and Irene F. Locke owed a tax deficiency of $11,996.05 for the taxable year ending December 31, 1969 and a tax deficiency of $72,796.60 for the taxable year ending December 31, 1970. We affirm.

John L. Locke, now deceased, was the son-in-law of O. D. Fisher who had developed an extensive corporate enterprise of diversified interests. Locke was the chief executive officer of many of the Fisher corporations, and, in general, had a position of leadership in the family enterprises.

One of the companies in which the Fisher family owned a substantial interest was Louisiana Long Leaf Lumber Company (4–L) with which Locke had no official connection until May of 1966. Locke incurred legal expenses during 1969 and 1970 defending a lawsuit brought under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5. Raymond Callahan, a relative of Locke's by marriage, brought the suit seeking damages for fraud in the sale of stock. Callahan's amended complaint alleged that Locke knew the stock of 4–L was worth in excess of $6,000 per share and that negotiations were being conducted to sell the company, but that when Callahan inquired as to the value of the stock on March 15, 1966, none of this information was conveyed to him. Instead Locke made statements that the income of the company in the future was uncertain and oil royalties of the company would probably decline and offered to buy his stock for $1,000 per share, which was a good deal more than the stock had sold for in the past. Callahan sold his 115 shares of stock to Locke, and Locke made a substantial profit a few months later when Boise Cascade Corporation acquired all of the outstanding 4–L stock for approximately $6,800 per share. Locke undertook a vigorous defense of the Callahan suit and the jury found in Locke's favor. Locke deducted the legal fees under 26 U.S.C. § 162 as ordinary and necessary expenses incurred in his trade or business when he filed with his wife a joint income tax return. The Commissioner of Internal Revenue disallowed the deductions on the ground they represented nondeductible capital expenditures incurred in connection with the purchase of the stock which was a capital asset. In a well written opinion which contains an excellent discussion of the factual background of the case, the Tax Court concluded that the lawsuit arose out of the purchase of the stock and not out of any business relationship Locke had with 4–L or Callahan.

---

* Honorable Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation.

1. John L. Locke, 65 T.C. 1004 (1976).

■ The only issue before us is whether the legal expenses stem from Locke's business of being a corporate executive and are deductible either under 26 U.S.C. § 162 as business expenses or under 26 U.S.C. § 212 as expenses incurred in a profit seeking activity, or whether the Commissioner and Tax Court were correct in finding that the legal fees constituted nondeductible capital expenditures. The test for determining the deductibility of legal fees is "whether the origin of the claim litigated is in the process of acquisition itself." *Woodward v. Commissioner of Internal Revenue*, 397 U.S. 572, 577, 90 S.Ct. 1302, 1306, 25 L.Ed.2d 577 (1970); *United States v. Hilton Hotels Corp.*, 397 U.S. 580, 583, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970); *United States v. Gilmore*, 372 U.S. 39, 49, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). *See also Madden v. Commissioner of Internal Revenue*, 514 F.2d 1149, 1150–51 (9th Cir. 1975), *cert. denied*, 424 U.S. 912, 96 S.Ct. 1108, 47 L.Ed.2d 316 (1976). The taxpayer's motives in defending the suit are not to be considered.

■ There seems to be no genuine dispute as to the law or the evidentiary facts, but only as to how the facts relate to the law. It is Locke's[2] contention that the lawsuit arose because of his executive position in the company, and that the suit could have been maintained by Callahan even if he had not purchased the stock. Although there is a certain appeal to this argument, it cannot prevail under the facts of this case. The amended complaint in the Callahan suit clearly shows that the origin of the claim related to the purchase of the stock. Paragraph V of Callahan's amended complaint states:

This is an action for damages for fraud in the sale of stock by plaintiffs to defendant JOHN L. LOCKE.

While the complaint detailed Locke's executive position within the family enterprise, the heart of the complaint was that Locke fraudulently induced Callahan to sell the stock to him, that Locke profited thereby, and that Callahan was entitled to damages. After reading the record we find little support for the claim that Callahan's suit was brought as a result of Locke's business position and advice and had nothing to do with the fact Locke himself bought the stock and profited.

The Commissioner was correct in assessing a deficiency.

The judgment of the Tax Court is affirmed.

---

2. Although the suit is now being maintained by the administratrix and by the separate executor of the estate of John L. Locke, in the interests of clarity he will still be referred to as one of the parties.