WILLIAM WAGNER AND EVELYN WAGNER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6290–79, 13865–79.    Filed June 9, 1982.

---

*Sidney A. Soltz*, for the petitioners.
*David R. Smith*, for the respondent.

OPINION

DRENNEN, *Judge*: Respondent determined deficiencies in petitioners' Federal income taxes as follows:

| Docket No. | TYE Dec. 31— | Deficiency |
|---|---|---|
| 6290–79 | 1975 | $15,394 |
| 13865–79 | 1976 | 7,510 |
| 13865–79 | 1977 | 10,136 |

These cases have been consolidated for purposes of trial, briefing, and opinion.

After concessions by petitioners, the only issue is whether attorney's and accountant's fees and other legal expenses paid by petitioner in connection with certain litigation are deductible expenses pursuant to section 212[1] or are nondeductible capital expenditures.

The cases were submitted on facts that were fully stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. The pertinent facts are as follows.

Petitioners William Wagner (hereinafter petitioner) and Evelyn Wagner, husband and wife, resided in Miami Beach, Fla., at the time they filed their petitions herein. Petitioners filed a joint Federal income tax return for each of the taxable years in issue with the Internal Revenue Service Center, Chamblee, Ga. Evelyn Wagner is a party herein solely by reason of filing a joint return for each of the taxable years in issue with her husband.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable years in issue.

Prior to November 27, 1972, petitioner owned 349,000 shares of common stock of Watsco, Inc. (hereinafter Watsco), a Florida corporation. Watsco was engaged in the design, manufacture, and sale of refrigeration components and tools, professional hair spraying systems, and roller bearings and wheels. Watsco stock was traded on the American Stock Exchange.

On November 27, 1972, petitioner agreed to sell 300,000 shares[2] of his Watsco stock to Albert H. Nahmad (hereinafter Nahmad) for $2,400,000. Of this amount, $700,000 was to be paid at the time of closing by certified check, while the remaining $1,700,000 was to be paid in 12 substantially equal quarterly installments of $141,674, plus interest at 6 percent per annum on the outstanding principal balance. The first of these payments was due 3 months from the date of closing. Nahmad thereafter assigned his interest in the November 27, 1972, purchase agreement to Alna Corp., a Panamanian corporation of which Nahmad was the principal officer. The closing date was specified in the purchase agreement to be no later than December 29, 1972, and in fact was closed on that date.[3]

Prior to December 29, 1972, petitioner was the chief executive officer of Watsco. On that date, he resigned as chief executive officer, and entered into a consulting agreement with Watsco for a period of 6 years at an annual rate of compensation of $50,000 per year plus certain fringe benefits. In addition, petitioner agreed not to compete with Watsco for a period of 5 years.

On December 31, 1974, Alna Corp. and Alna Capital Associates, a limited partnership formed under the laws of the State of New York[4] (hereinafter the plaintiffs), filed a lawsuit in the U.S. District Court for the Southern District of Florida naming petitioner and several others as defendants (hereinaf-

---

[2]This represented about 37.8 percent of the stock of Watsco.

[3]Petitioner reported the gain from this sale on the installment basis as long-term capital gain on his tax returns for 1972 and subsequent years. Respondent does not dispute this treatment.

[4]Nahmad is the sole general partner of Alna Capital Associates. No evidence was presented as to how this partnership was otherwise connected with the purchase of the Watsco stock.

ter sometimes referred to as the lawsuit). The complaint filed in connection with this lawsuit charged generally that the defendants had made material misleading statements to the plaintiffs and to Nahmad, and had failed to disclose certain other information in connection with the sale of the Watsco stock. The complaint alleged that the acts, misrepresentations, and failure to disclose, complained of therein, constituted a violation by petitioner of section 10 of the Securities Act of 1934, and rule 10(b)-5, of the Securities and Exchange Commission (hereinafter SEC). The remedies sought in the lawsuit included, inter alia, (1) a complete recision of the purchase of stock from petitioner, and (2) compensatory damages of at least $1,500,000 and punitive damages of $1 million.

On January 31, 1975, petitioner filed an answer to the above complaint, including therein affirmative defenses and counterclaims. The counterclaims were (1) for the amount of $131,593.81, which petitioner alleged was the installment payment due on January 1, 1975, in respect of his Watsco stock sale, and (2) for the amount of $566,670, which he alleged to be the remaining unpaid balance of the purchase price due in respect of such sale[5] (not including the amount claimed in count 1).

The plaintiffs filed an amended complaint and demand for jury trial on July 1, 1975. Petitioner filed his answer to the amended complaint on July 14, 1975, including therein affirmative defenses and counterclaims, which were essentially the same as in his original answer, filed on January 31, 1975.

On November 30, 1975, the district judge required the plaintiffs to make an election between the remedies sought in the pleadings. The plaintiffs elected to pursue their claim for money damages and waived their prayer for recision.

On December 23, 1977, Watsco terminated the December 29, 1972, consulting agreement with petitioner. Thereafter, on or about December 28, 1977, Watsco filed a lawsuit against

---

[5]Petitioner counterclaimed for the remaining portion of the purchase price although it was not yet due under the sales agreement. He alleged that the plaintiff had anticipatorily breached such agreement by refusing to make any further payments and by filing suit against petitioner.

petitioner in the Circuit Court for the Eleventh Judicial Circuit, Dade County, Fla., alleging fraud, misrepresentation, and deceit in connection with their consulting agreement. Watsco sought recision of that agreement as well as compensatory and punitive damages.[6]

During the taxable years 1975, 1976, and 1977, petitioner paid and deducted attorney's fees and other legal expenses incurred in connection with the lawsuit in the amounts of $61,431, $13,335, and $18,139, respectively.[7]

Respondent has disallowed these deductions in their entirety because he determined that the legal expenses were incurred as a result of a capital transaction rather than in a trade or business.[8]

The issue for decision is whether expenses incurred in defending a lawsuit wherein it was alleged that petitioner had made fraudulent representations and concealed certain information with respect to the sale of stock, in violation of the Securities Act of 1934 and rule 10(b)–5 of the SEC, are deductible expenses pursuant to section 212 or are nondeductible capital expenditures.[9]

Petitioner claims that the legal expenses, and attorney's and accountant's fees (hereinafter collectively referred to as the litigation expenses) were paid for the "production or collection of income" within the meaning of section 212(1).[10] He asserts

---

[6]None of the expenses claimed by petitioner herein were related to this claim.

[7]No evidence was presented as to the final outcome, if any, of the lawsuit as of the time of this trial.

[8]Petitioner does not dispute respondent's disallowance of $2,025 of the expenses claimed for the taxable year 1975. Respondent has not disputed the amount of the remaining portion of the deductions claimed by petitioner.

Petitioner reported long-term capital gain from this transaction on his 1975 return in the amount of $133,638. Respondent added the allowable legal expenses paid in 1975 ($59,406) to the basis of the stock and reduced the reported capital gain by that amount for 1975. Since petitioner received no payments on the installment sale in 1976 or 1977, he reported no capital gain from the transaction on his 1976 and 1977 returns, so respondent simply disallowed the legal expenses claimed as a deduction under sec. 212 for those years.

[9]Petitioner did not claim, either at trial or on brief, that an allocation of the legal expenses should be made between expenses incurred in defending the suit and those incurred in counterclaiming for the unpaid balance of the sales price; rather, he has claimed the entire amount to be deductible.

[10]SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

that the stock sale to the plaintiffs was a completed transaction, and that in order to protect and collect his income, both from the sale of his stock and from his consulting fees from Watsco, he had no recourse other than to defend the lawsuit.

Respondent claims that the litigation expenses were incurred in a dispute having its origin in the disposition of a capital asset, and are therefore nondeductible capital expenditures. He maintains that the real dispute in the lawsuit centered around what price the plaintiffs would ultimately have to pay for the 300,000 shares of Watsco stock purchased.

Section 212 provides for the deduction of all ordinary and necessary expenses paid or incurred during a taxable year, inter alia, "for the production or collection of income." The purpose of this section is to extend deductions previously allowed only in a "trade or business" context to certain nonbusiness situations. See *Baier v. Commissioner*, 63 T.C. 513, 517 (1975), affd. 533 F.2d 117 (3d Cir. 1976); *Boagni v. Commissioner*, 59 T.C. 708, 712 (1973). Likewise, the restrictions and limitations applicable to the deductibility of trade or business expenses are also applicable to the expenses covered by section 212. *United States v. Gilmore*, 372 U.S. 39, 45 (1963).

One of the limitations to deductibility of expenses under section 212 is that capital expenditures are nondeductible. Sec. 263;[11] see *Woodward v. Commissioner*, 397 U.S. 572, 575 (1970); *United States v. Hilton Hotels*, 397 U.S. 580 (1970); sec. 1.212–1(n), Income Tax Regs. These expenditures are added to "the basis of the capital asset with respect to which they were incurred, and are taken into account for tax purposes either through depreciation or by reducing the capital gain * * * when the asset is sold." (*Woodward v. Commissioner, supra* at 574–575; see sec. 1016(a)).

Expenses which are incurred in either the acquisition or disposition of a capital asset are considered capital expenditures. *Woodward v. Commissioner, supra* at 575; *United States v. Hilton Hotels, supra* at 585; sec. 1.263(a)–2(a), Income Tax Regs. In determining whether litigation expenses are incurred

---

[11]SEC. 263. CAPITAL EXPENDITURES.

(a) GENERAL RULE.—No deduction shall be allowed for—

(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *

in the acquisition or disposition of property, or merely for the production or collection of income, the U.S. Supreme Court, in *Woodward v. Commissioner, supra,* adopted what has become known in tax parlance as the "origin-of-the-claim" test. See *United States v. Hilton Hotels, supra.* Therefore, our inquiry is whether the claim had its origin in the disposition of the Watsco stock, or in petitioner's attempt to collect income owed to him. In this regard, the proper focus is not upon petitioner's motive in undertaking a defense in the litigation, but, rather, upon the origin of the claim against petitioner. *Woodward v. Commissioner, supra; United States v. Gilmore, supra; Madden v. Commissioner,* 514 F.2d 1149, 1151 (9th Cir. 1975), revg. 57 T.C. 513 (1972).[12] Resolution of this question requires an

---

[12]Prior to the decision of the Supreme Court in *United States v. Gilmore,* 372 U.S. 39 (1963), the Fifth Circuit in *Naylor v. Commissioner,* 203 F.2d 346 (1953), revg. 17 T.C. 959 (1951), held that the exercise of an option to purchase stock closed the transaction and that legal expenses incurred in a dispute over the purchase price were incurred to collect the proceeds of sale of a capital asset and were thus deductible. Also in *Doering v. Commissioner,* 39 T.C. 647 (1963), affd. 335 F.2d 738 (2d Cir. 1964), this Court held that legal expenses incurred to collect amounts due on taxpayer's share of a fully executed contract distributed to him in liquidation of a corporation were expenses incurred in the collection of income, rather than the disposition of a capital asset, and were therefore deductible. The Court relied heavily on *Naylor* and said that the deductibility of legal expenses depends on the *purpose* for which incurred. However, in *Munson v. McGinnis,* 283 F.2d 333 (3d Cir. 1960), the Third Circuit held that legal expenses incurred by the seller in an action based on fraud to obtain additional proceeds of sale were expenses of modifying the terms of sale rather than to collect income and were an essential incident in the disposition of a capital asset and were thus not deductible. Also see *Spangler v. Commissioner,* 323 F.2d 913 (9th Cir. 1963), affg. a Memorandum Opinion of this Court.

In *Gilmore,* the Supreme Court held that legal expenses incurred in a divorce proceeding to protect the taxpayer's investments were personal expenses, and thus not deductible, rather than business or investment expenses deductible under either sec. 162 or sec. 212. The Court stated that the origin and character of the claim with respect to which the expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling test of whether the expense was business or *personal.* The Court concluded that the claim arose out of the marital relationship and thus was personal. The origin-of-the-claim test was extended by the Supreme Court in *Woodward v. Commissioner,* 397 U.S. 572 (1970), and its companion case *United States v. Hilton Hotels,* 397 U.S. 580 (1970), to apply to expenses incurred in determining the price for acquiring a capital asset, rejecting the primary purpose test which had been used with respect to expenses incurred in defending or perfecting title. The Court stated, in *Woodward,* that the simpler test was whether the origin of the claim litigated was in the process of acquisition itself and should be used. In *Hilton,* the Court said that expenses arising out of the acquisition of a capital asset are capital expenses, quite apart from whether the taxpayer's purpose in incurring them is the defense or perfection of title—and the fact that under local law, title to the stock passed prior to incurring the appraisal expenses made no difference. Price is an element of acquisition, as is passage of title, and it makes no difference which comes first.

In *Helgerson v. United States,* 426 F.2d 1293 (1970), the Eighth Circuit applied the origin-of-the-claim (litigation) test even though the taxpayers were sellers rather than buyers,

examination of all the surrounding facts and circumstances. *Boagni v. Commissioner, supra* at 713.

In the lawsuit out of which the litigation expenses herein arose, the plaintiffs claimed that petitioner had violated the Securities Act of 1934 and rule 10(b)–5 of the SEC by making fraudulent representations and failing to disclose facts within his knowledge, thereby inducing them to purchase the Watsco stock for more than its true value. They initially sought both a recision of the purchase and a monetary judgment, but later abandoned their claim for recision. The essence of their claims

---

pointing out that the *Woodward* and *Hilton* cases favored an expansive application of the phrase "incurred in the disposition of a capital asset." The Court also cast doubt on the soundness of the *Naylor* case in light of the subsequent *Woodward* case. And in *Estate of Baier v. Commissioner*, 533 F.2d 117 (3d Cir. 1976), affg. 63 T.C. 513 (1975), it was held that the origin-of-the-claim test is applicable to disposition of a capital asset (a patent) as well as to acquisition of property. Also, in *Madden v. Commissioner*, 514 F.2d 1149 (9th Cir. 1975), revg. 57 T.C. 513 (1972), involving expenses incurred in resisting the Government's right to condemn taxpayer's land, the Court said that *Woodward* implied that the origin-of-the-claim test should be used to characterize litigation expenses whenever its use would be feasible. Applying that test, the Court found that litigation resisting the taking of a capital asset was inherently related to the sale and acquisition of a capital asset and resulted in a capital expenditure even though a sales price was not involved.

This Court in *Boagni v. Commissioner*, 59 T.C. 708 (1973), noted that *Woodward* and *Hilton* had enunciated the rule that in cases where the litigation involved the acquisition or disposition of capital assets, the origin of the claim, rather than the taxpayer's primary purpose in litigating the claim, is the controlling criterion in deciding whether the expenditure should be capitalized, and that this Court has extended the same rule to cases involving the defense or perfection of title to property. The Court went on to say that the rule does not contemplate a mechanical search for the first in a chain of events which led to the litigation but requires an examination of all the facts, directed toward determining the "kind of transaction" out of which the litigation arose.

In *Locke v. Commissioner*, 65 T.C. 1004 (1976), affd. 568 F.2d 663 (9th Cir. 1978), where taxpayer-buyer incurred litigation expenses in defending a suit brought by the seller for damages under SEC rule 10(b)5, based on taxpayer's failure to disclose insider information affecting the value of the stock prior to the sale, we found the origin-of-the-claim test to be applicable and concluded that the defense to the litigation was not to protect taxpayer's business reputation, but was to protect his $675,000 profit in purchasing and reselling the stock—thus, the expenses were capital in nature. See also *Bradford v. Commissioner*, 70 T.C. 584 (1978), where in an SEC action, the buyer of stock was forced to disgorge profits realized on resale of stock, this Court applied the origin-of-the-claim test to conclude that the monetary portion of the SEC action arose in connection with taxpayer's purchase of the stock (nondisclosure of information) and must be added to taxpayer's basis in the stock.

Finally, in *Soelling v. Commissioner*, 70 T.C. 1052, 1055 (1978), a Court-reviewed opinion, this Court accepted the reversal of *Madden*, stating:

"In *Madden* the Ninth Circuit clarified the law in this area basing its opinion on those of the Supreme Court in * * * [*Woodward* and *Gilmore* ]. The cummulative result of these opinions places a difficult burden on the taxpayer to prove that a section 212 expense is ordinary and necessary rather than capital in nature when incurred in connection with an investment, be it an acquisition or a disposition thereof. * * * "

was that the agreed-upon price for the Watsco stock was excessive, and that such price should be modified.[13]

When a purchaser brings suit to determine the purchase price of a capital asset, the litigation expenses incurred therein are considered a part of his cost of acquiring that asset (see *Woodward v. Commissioner, supra; United States v. Hilton Hotels, supra*), and when a seller brings suit to determine such price, the litigation expenses are a part of his cost of disposing of that asset. See also *Soelling v. Commissioner*, 70 T.C. 1052 (1978); *Estate of Meade v. Commissioner*, 489 F.2d 161 (5th Cir. 1974), revg. a Memorandum Opinion of this Court.

Further, we have held that expenses incurred by a taxpayer in defending a lawsuit brought by the seller of certain stock, after that sale had been completed, were capital expenditures. In *Locke v. Commissioner*, 65 T.C. 1004 (1976), affd. 568 F.2d 663 (9th Cir. 1978), the taxpayers were sued in Federal District Court for allegedly violating the Securities Act of 1934 and rule 10(b)-5 of the SEC in connection with the purchase of certain stock. In that case, we found that the origin of the claim which formed the basis for the plaintiffs' (sellers) action was the taxpayers' allegedly fraudulent representations and concealments when purchasing the stock from the plaintiffs, and held that the legal expenditures incurred in defending the lawsuit had their origin in the acquisition of a capital asset and were therefore nondeductible capital expenditures. See *Bradford v. Commissioner*, 70 T.C. 584 (1978).

We see no reason why the result should be different simply because the suit was brought by a purchaser rather than a seller. The origin of a claim is not determined by who brought the suit, but rather by the "'kind of transaction' out of which the litigation arose." (Citations omitted.) *Boagni v. Commissioner, supra* at 713. Indeed, as the Court of Appeals stated in *Munson v. McGinnes*, 283 F.2d 333, 336 (3d Cir. 1960), it would be "anomalous to require capitalization of expenses of the party who is on one side of a negotiation or controversy over the disposition of a capital asset while permitting the opposing

---

[13]It is not clear from the pleadings in the lawsuit just on what the claim for compensatory damages was based. The plaintiffs believed that because of fraudulent misrepresentations by petitioner, they had paid much more for the Watsco stock than it was worth, and sought an adjustment of the price paid. See *Locke v. Commissioner*, 65 T.C. 1004 (1976), affd. 568 F.2d 663 (9th Cir. 1978).

party to claim an ordinary deduction for his equivalent expenses." As a seller of stock, petitioner has incurred litigation expenses in defense of claims that he violated, inter alia, the Securities Act of 1934 and rule 10(b)–5 of the SEC when selling the Watsco stock. The plaintiffs claimed that too much had been paid for such stock, and a readjustment of the purchase price was sought. We think that the litigation expenses incurred by petitioner in defense of this claim had their origin in the disposition of the Watsco stock and are therefore nondeductible capital expenditures. See *Munson v. McGinnes, supra*; see also *Locke v. Commissioner, supra*.[14]

Petitioner has relied primarily on *Naylor v. Commissioner*, 203 F.2d 346 (5th Cir. 1953), revg. 17 T.C. 959 (1951), and *Doering v. Commissioner*, 39 T.C. 647 (1963), affd. 335 F.2d 738 (2d Cir. 1964). In *Naylor v. Commissioner, supra*, the taxpayer granted an option to purchase certain stock which was a capital asset in his hands, at a price based on the stock's net asset value shown on the books of the company on a certain date. The purchaser thereafter exercised the option, but a dispute arose as to the amount due under the sales contract. In resolving the dispute, the taxpayer incurred certain legal expenses which he sought to deduct as nonbusiness expenses incurred in the collection of income. The Court of Appeals found that the taxpayer's attorney was not employed until after an enforceable contract of sale existed, and held that the legal expenses were deductible as expenses incurred for the collection of income.

In *Doering v. Commissioner, supra*, the taxpayer was a shareholder in a corporation which produced motion pictures for distribution. It contracted with another corporation for the latter to distribute and exhibit motion pictures produced by it. A dispute arose between the corporations over the amount

---

[14]When we initially considered this issue, we had some doubts whether the origin-of-the-claim test should be applied in light of the fact that the sale of the stock here was a closed transaction and petitioners, as the sellers of the stock, were trying to collect or protect their right to receive the contract price of the sale. However, a careful perusal of the case law, summarized in note 12, convinces us that the origin-of-the-claim test should be applied. Applying that test, it becomes clear that, regardless of petitioners' motive or purpose in defending against the claim, the litigation originated out of the sale of petitioners' stock and the buyers' claim of fraud on the part of petitioners in that transaction. The "kind of transaction" from which the litigation stemmed (see *Boagni v. Commissioner, supra*) was a capital transaction.

that the taxpayer's corporation was to receive under the contract. Before the dispute was settled, the taxpayer's corporation was liquidated, and its claim against the other corporation, which had no ascertainable value at that time, was distributed to the shareholders. The claim was ultimately settled, and the taxpayer deducted the legal fees incurred in connection with that settlement under section 212(1) as expenses incurred for the collection of income. Relying heavily on *Naylor*, we sustained the taxpayer, finding that since the liquidation was completed when the expenses were incurred, they were incurred for the collection of income. We also said that the deductibility of legal expenses depends on the *purpose* for which incurred.

Petitioner's reliance on these two cases, we believe, is misplaced. First, with respect to the *Naylor* case, we note that the propriety of that decision, in light of the Supreme Court decisions in *Woodward v. Commissioner, supra,* and *United States v. Hilton Hotels, supra,* has been "considerably eroded."[15] *Estate of Meade v. Commissioner, supra* at 167; see *Helgerson v. United States,* 426 F.2d 1293, 1298 (8th Cir. 1970). Further, in *Estate of Meade,* which came from the same circuit as *Naylor* 21 years later, the Court of Appeals limited the holding in *Naylor* to factual situations wherein the disposition of a capital asset had been consummated, and the subsequent controversy concerns only the enforcement of the terms of the agreement. In the instant case, the origin of the claim out of which the expenses in question arose was a lawsuit brought by the plaintiffs essentially to modify the terms of the sale to reflect the true value of the stock. We do not view this controversy to be one of the enforcement of the terms of the sales agreement. See *Munson v. McGinnes, supra.*

With regard to the *Doering* case, we note that that case was also decided before *Gilmore, Woodward,* and *Hilton* were decided and stated that "the deductibility of legal expenses depends on the purpose for which they were incurred." It also relied heavily on *Naylor.*

In view of the foregoing, we find that litigation expenses

---

[15]Prior to *Woodward v. Commissioner,* 397 U.S. 572, 575 (1970), the test for determining whether litigation expenses were incurred in connection with the acquisition or disposition of a capital asset was the "primary purpose" of the taxpayer for incurring such expense.

incurred by petitioner had their origin in the disposition of the Watsco stock, and, therefore, we hold such expenses to be nondeductible capital expenditures.

*Decisions will be entered for the respondent.*