ALVIN K. LIN and PATRICIA A. LIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lin v. Commissioner
Docket No. 14020-81.
United States Tax Court
T.C. Memo 1984-581; 1984 Tax Ct. Memo LEXIS 89; 49 T.C.M. (CCH) 1; T.C.M. (RIA) 84581; November 1, 1984
*89 Petitioners incurred legal expenses in instituting and pursuing two lawsuits in state court. One lawsuit involved a challenge to petitioners' 50-percent equal ownership in two corporations. Defendants in this suit were under the mistaken belief that their exercise of an allegedly valid option had given them majority ownership in the corporations. The other lawsuit pertained to a deed, which purportedly conveyed petitioners' 50-percent interest in rental property. Petitioners sought, first, to have the deed set aside as fraudulent and void, and, second, for an accounting of rents and profit. Held, in both suits the origin of the claim was to protect, defend, or restore petitioners' interest in property. Thus, the legal expenses must be capitalized. John B. White,Domenick R. Lloce,Kristine Kaiser, and Stephen B. Gillman, for the petitioners. Judy K. Hunt, for the respondent. STERRETT MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated March 24, 1981, respondent determined deficiencies in petitioners' Federal income taxes for the taxable years ended December 31, 1977 and December 31, 1978 in the amounts of $12,349.09 and $16,533.02, respectively. *90 The sole issue before the Court is whether litigation costs paid by petitioners are deductible expenses or capital expenditures. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioners Arvin K. Lin and Patricia A. Lin were residents of Lake Worth, Florida at the time of filing their petitions in this case.They filed joint Federal income tax returns for the years 1977 and 1978 with the Internal Revenue Service Center in Chamblee, Georgia. At all relevant times, petitioners were on the cash basis of accounting. Over a 16-year period, petitioners owned a 50-percent interest in several business arrangements with Dr. Frank J. Dolly and Ruth Dolly (hereinafter the Dollys). Their several business arrangements included the formation of Palm Beach Mobile Homes, Inc. (PBMHI) and Dolan Corporation. The business purpose of PBMHI was to acquire real estate and to build and operate trailer parks. Dolan Corporation's function was to manage the equipment and supervise the construction of the trailer parks. In addition, petitioners and the Dollys owned *91 an undivided one-half interest in unimproved land and improved property. The improved property (hereinafter referred to as the Boutwell property) consisted of a rental warehouse and an office building. Arvin Lin had significant experience in building trailer parks and supervised all of the construction. He received a salary of $100 a week as compensation for his services. Dr. Dolly was the financial backer. He also took an active interest and role in the operation of the joint ventures. Sometime around 1972 personal differences arose between petitioners and the Dollys. The cause of these differences was twofold. First, a city moratorium on access to the sewer system had foreclosed further custruction. Second, there had been a deterioration in Dr. Dolly's health. These differences eventually affected the operation and management of the businesses. Dr. Dolly attempted to assert control over the businesses. He told the tenants of PBMHI not to deal with petitioners. The Dollys also denied petitioners access to the books and records of the corporations and prevented them from participating in the management of the businesses. Lastly, the tenants of the Boutwell property were *92 informed that rent was to be paid to Dr. Dolly's wholly owned corporation, Almard. Almard Corporation purportedly had been deeded this property on November 26, 1973 from petitioners and the Dollys. As a result of the Dollys' conduct, petitioners filed two lawsuits in the Circuit Court of the Fifteenth Judicial Circuit of Florida. These lawsuits were as follows: (a) Arvin K. Lin and Patricia A. Lin,Petitioners v. Palm Beach Mobile Homes, Inc., a Florida corporation; Dolan Corporation, a Florida corporation; Frank J. Dolly and Ruth R. Dolly, Respondents, Case No. 73-2481-CA (L) 01, (hereinafter referred to as the Palm Beach Case). (b) Arvin K. Lin and Patricia A. Lin, Plaintiffs v. Frank J. Dolly, Ruth R. Dolly and Almard Corporation, Respondents, Case No. 73-2577-CA (L) 01, (hereinafter referred to as the Dolly Case). The Palm Beach Case
On December 3, 1973, petitioners filed a Petition for Involuntary Dissolution of Corporations pursuant to section 608.28, Fla. Stat. Ann. (West 1977). [1] The corporations involved were PBMHI and Dolan Corporation. Petitioners claimed that the corporations were deadlocked in ownership because each party owned a 50-percent interest. They also claimed *93 that the management of the corporations was deadlocked. Thus, pursuant to section 608.28, Florida Statutes, petitioners insisted that the corporations should be dissolved. The Dollys asserted *94 in their counterclaim that they possessed a valid option to repurchase stock in PBMHI and Dolan Corporation from petitioners. They claimed that their valid exercise of this option made them majority shareholders of the corporations. Thus, they maintained that they were entitled to exercise full control and management over the corporate assets. Petitioners denied the existence of the alleged option. On January 10, 1974 the case was heard before a special trial master. He found that the corporations were deadlocked and recommended that they be dissolved. He further suggested that a receiver be appointed to handle the liquidations. These findings and recommendations were accepted by the circuit court on June 24, 1974. Accordingly, Mr. Charles Houston (Mr. Houston) was appointed receiver with authority to liquidate the corporations and to operate the corporations' mobile home parks in the interim. The Dolly Case
On December 13, 1973 petitioners filed a complaint against the Dollys. The relief requested was, first, to have a deed set aside as fraudulent and void, and second, for an accounting of rents or profits. Petitioners' main concernwas the Dollys' assertion of full ownership *95 of the property.The deed, filed on November 26, 1973, purportedly conveyed two parcels of land that petitioners had a 50-percent interest in to the Dollys' wholly owned corporation, Almard. On April 30, 1975 the court found that the deed was fraudulently conveyed and ordered that it be set aside and cancelled, thereby restoring to petitioners a 50-percent interest in the real estate. The court further ordered the Dollys to "submit a full and complete accounting reflecting all income and expenses of the subject real estate from November 26, 1973 forward, and at the time of submitting said accounting shall pay unto * * * [petitioners] one-half of the net income." On August 25, 1975, pursuant to petitioners' motion, the court also appointed Mr. Houston as receiver with authority to manage the property and collect its rents. In 1977, as a result of these two lawsuits, Mr. Houston sold some of the assets which had been at issue in both cases. Petitioners' share of the net proceeds from these sales totaled $441.513.36. That amount was remitted to them in 1977. In 1978 petitioners and the Dollys agreed to exchange their remaining interests in the real property held by the corporations and *96 by them jointly. This agreement operated as a final settlement. Accordingly, petitioners received property in 1978 which had an appraised value of $402,900. In instituting and pursuing these two lawsuits, petitioners incurred attorney fees of $110,679.14 and $90,000 for the years 1977 and 1978, respectively. The fees were determined on a contingency basis. Petitioners agreed to pay their attorney 25 percent of all proceeds (cash or property) received by them which were generated out of or in connection with the litigation. [2] The reason for the contingency fee arrangement was petitioners' inability to pay by any other method. The 1977 legal fees of $110,679.14 were calculated as follows: Amount Received
Fee
Date
by Petitioners
Amounts
11/4/77
$315,866.23
$ 78,966.56
11/4/77
750.00
187.50
11/7/77
50,000.00
12,500.00
11/8/77
74,897.13
18,724.44
11/18/77
(costs paid
300.64
by petitioners)
$110,679.14 The *97 attorney fees for 1978 pertained to the property petitioners received as a final settlement. It had a value of $402,900, 25-percent of which totaled $100,725. Petitioners, however, paid their attorney only $90,000 of the fee in 1978. On their Federal income tax returns for 1977 and 1978, petitioners claimed a deduction for legal fees of $110,679.14 and $90,000,respectively. In the statutory notice of deficiency, respondent determined that the deductions were not allowable since it had not been shown that any amount represented ordinary and necessary business expenses. Rather, respondent determined that the claimed deductions represented capital expenditures which were incurred to perfect or protect legal title. OPINION An income tax deduction is a matter of legislative grace, and the taxpayer has the burden of proving the right to the claimed deduction. Interstate Transit Lines v. Commissioner,319 U.S. 590, 593 (1943); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners incurred legal expenses in instituting and pursuing two lawsuits, the Palm Beach case and the Dolly Case. They claim that the expenses are currently deductible under section 212. [3]Section 212 *98 allows a deduction for expenses paid or incurred "for the production or collection of income" or "for the management, conservation, or maintenance of property held for the production of income." Respondent maintains that the expenditures were incurred either to protect, defend, or restore title to property or to dispose of a capital asset. Thus, his position is that the costs of litigation must be capitalized pursuant to section 263, secs. 1.263(a)-2(c), 1.212-1(k), Income Tax Regs.
Once again this Court is faced with the oft-litigated issue of whether legal expenses should be treated as a current deduction or a capital expenditure. While the line of demarcation between the two is often vague, the courts have devised a standard for characterizing the costs of litigation. The correct tax treatment is determined by reference to the underlying claim, typically referred to as the origin-of-the claim rule. United States v. Gilmore,372 U.S. 39 (1963); Woodward v. Commissioner,397 U.S. 572 (1970); Boagni v. Commissioner,59 T.C. 708, 713 (1973); *99 Reed v. Commissioner,55 T.C. 32, 39-41 (1970). Determination of the original of the claim requires an examination of the kind of transaction out of which the litigation arose. Thus, who brought the suit is irrelevant; rather, resolution of this issue requires a review of all the facts. Wagner v. Commissioner,78 T.C. 910, 916-918 (1982); Boagni v. Commissioner,supra at 713. Since two lawsuits are involved, each will be separately analyzed. In the Palm Beach case, petitioners, pursuant to section 608.28, Florida Statutes, filed a petition for involuntary dissolution of PBMHI and Dolan Corporation. Petitioners argue that the legal action was done to remove the alleged destructive management of the corporations and to prevent the deterioration of the corporations' income producing assets. They further contend that they acted to protect and preserve the value of their stock and to ensure that Mr. Lin received his salary payments. Hence, petitioners assert that the legal expenses fall within section 212 and are currently deductible. The evidence does not support petitioners' contentions. [4] The Palm Beach litigation arose because the Dollys attempted to exercise full control over *100 the two corporations. This attempt was based on the mistaken belief that their exercise of an allegedly valid option had given them majority ownership in the corporations. Petitioners reacted to this challenge to their 50-percent equal ownership by claiming that a deadlock in management existed and by asking a state court to dissolve the corporations. The origin of the claim clearly was to protect or defend their proportionate interest in the ownership of the stock of the corporations. Thus, the entire cost of litigation must be capitalized. [5] In the Dolly case, petitioners filed a complaint requesting first, to have a deed set aside as fraudulent and void, and second, for an accounting of rents or profits. Petitioners argue that the legal fees were incurred to restore their income from the rental property and are thus deductible. *101 We disagree. The deed, which purportedly had conveyed the two parcels of land to Almard Corporation, eliminated petitioners' 50-percent interest in the rental property. Petitioners could have their interest in the property restored, along with their right to its income and profits only if a court set the deed aside. Thus, the income which petitioners will receive from the property results directly from the establishment of their right to 50-percent ownership in the property. Hence the legal fees were incurred to restore petitioners' interest in the property and must be capitalized. [6] *102 Decision will be entered for the respondent.
Footnotes
1. Section 608.28, Fla. Stat. Ann. (West 1977), provided as follows in the year in controversy: When the total stock voting power is evenly divided into two independent ownerships or interests, and the number of directors is even and equally divided respecting the management of the corporation with one-half of the ownership favoring the course advocated by one-half of the directors, and the other half of the ownership favoring the course of the other half, or where the ownership is equally divided and the number of directors is uneven, but the two halves of the ownership are unable to agree on or elect successor directors and the old directors are holding over, the circuit court, sitting in chancery, may entertain a petition from any stockholder for involuntary dissolution of the corporation. If, after hearing thereon, the court finds that the division of ownership is equal and cannot be reconciled, he may appoint a receiver or trustee of the corporation, and enter an order that it be dissolved. * * *↩
2. It should be noted that none of the cash or property petitioners received in 1977 and 1978 was with respect to the earnings of PBMHI, Dolan Corporation or the Boutwell property. Thus, none of the legal fees paid in 1977 or 1978 pertained to petitioners' receipt, if any, of income from the properties.↩
3. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
4. Even if the record warranted petitioners' contentions, it would only demonstrate their purposes in instituting the lawsuit, not the origin of the claim. ↩
5. Because we find that the costs were incurred to perfect or defend title to property, we need not address respondent's alternative arbument that the costs were incurred to dispose of a capital asset.↩
6. Petitioners alternatively argued that the legal costs should be allocated between sections 212 and 263. This contention is without merit. The origin of the two lawsuits was to protect, defend, or restore interest in property. Even if we were inclined to implement petitioners' suggestion, an allocation still would not be justified on the facts of this case. The legal fees petitioners paid were 25 percent of the cash or property they had received in 1977 and 1978.None of the cash or property received by petitioners in 1977 and 1978 pertained to any income generated by PBMHI, Dolan Corporation, or the Boutwell property.Since petitioners were on the cash method of accounting, none of the legal fees paid in 1977 and 1978 could have been section 212↩ expenses.