LENNON M. DUNTLEY, AKA L. M. DUNTLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Duntley v. Commissioner
Docket No. 36769-84.
United States Tax Court
T.C. Memo 1987-579; 1987 Tax Ct. Memo LEXIS 582; 54 T.C.M. (CCH) 1138; T.C.M. (RIA) 87579; November 23, 1987; As amended November 24, 1987 Howard C. Alphson, for the petitioner. Sylvia G. Lewellyn, for the respondent. HAMBLEN
MEMORANDUM FINDING OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency of $ 12,411.00 in petitioner's 1981 Federal income tax. After concession, [1] the issue presented for decision is whether legal expenses were expenses incurred in connection with the management or conservation of income-producing property and, hence, deductible *583 under section 212, [2] or personal expenses or capital expenditures nondeductible under sections 262 or 263, respectively. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Rancho Santa Fe, California, at the time the petition was filed in this case. Petitioner was married to Ellen Gale Duntley (hereinafter "Mrs. Duntley") until her death on June 26, 1980. Sometime in 1980, prior to her death, Mrs. Duntley was diagnosed as suffering from cancer. Upon the determination of Mrs. Duntley's illness, petitioner and his wife contacted Harold S. Small (hereinafter "Small"), an attorney whom petitioner had used in 1974 for other legal services. Mrs. Duntley was concerned that she would die without making provisions for *584 her children from a former marriage and, consequently, petitioner and his wife requested estate planning advice from Small. At a meeting with Small, petitioner and his wife discussed, in general, the establishment of an inter vivos trust to be set up during their joint lives, as well as the preparation of separate, reciprocal wills. In the meeting with Small, petitioner and his wife discussed both their community property and their respective separate properties. At the time, petitioner had separate property valued at over $ 5,000,000. Mrs. Duntley had separate property valued at approximately $ 144,660. Their community property was valued at approximately $ 302,000. At the time of the meeting with Small, some of petitioner's separate property was income-producing property. Petitioner's separate income-producing property, principally real estate, included, among other things, a citrus ranch, an office building, an automotive service facility, and stock. [3]
Small began the preliminary drafting of the wills *585 and trust documents. The provisions of the draft of the trust agreement ultimately delivered to petitioner refer to both the respective separate properties of petitioner and of Mrs. Duntley and to their community property. The draft of the trust document provided that, upon the death of the first spouse, the assets of the trust would be divided into two trusts, an "A Trust" and a "B Trust." Under the draft of the trust agreement, the remaining spouse, in this case petitioner, was to receive the entire net income of both trusts for his lifetime, and petitioner would have the power to appoint any part of the principal or undistributed income of Trust A to himself, his estate, or any person or entity. The trust agreement provided further that, upon the death of the second spouse, any assets of Trust A were to be added to Trust B, and then Trust B was to be held and maintained for the benefit of certain of Mrs. Duntley's children and grandchildren. Neither petitioner nor Mrs. Duntley executed the draft of the trust agreement, or of his or her respective will prior to her death in 1980. Petitioner would never have agreed to the trust agreement or will in the form that the documents *586 were drafted at the time off his wife's death. Copies of the preliminary drafts of the wills of trust documents were delivered to petitioner one week after his wife's death. On June 26, 1980, Mrs. Duntley died without executing a last will and testament. Under California intestacy laws, one third of Mrs. Duntley's separate property and all her community property interest passed to petitioner on her death, with the remaining separate property distributed in equal shares to her three children. While in petitioner's house sometime after their mother's death, Mrs. Duntley's two daughter, Dyanne Bohner and Nancy Ross (hereinafter "the daughters"), found and read the copies of the draft trust agreement and mutual reciprocal wills prepared by Small. In June of 1981, the daughters brought an action against petitioner and other unnamed defendant "Does" (hereinafter "the Bohner lawsuit"). Under the first cause of action (fraud), the daughters alleged that petitioner had willfully prevented Mrs. Duntley from executing her will and that he had failed to execute his mutual reciprocal will, intending thereby to acquire for himself a larger interest in Mrs. Duntley's estate than what was *587 agreed to previously be petitioner and Mrs. Duntley. Thus, it was alleged, the daughters were precluded from receiving specific bequests to which they otherwise would have been entitled. Under the second cause of action (breach of fiduciary duty), the daughters alleged that petitioner occupied a confidential relationship with Mrs. Duntley both as her spouse and as the intermediary between Mrs. Duntley and Small. The daughters alleged further that petitioner breached that fiduciary duty and confidential relationship to Mrs. Duntley by failing to deliver her will to her for execution before her death, intending thereby to acquire for himself a larger interest in her estate than what was agreed to previously by petitioner and Mrs. Duntley. Thus, it was alleged, the daughters were precluded from receiving specific bequests to which they otherwise would have been entitled. [4]
*588 Petitioner filed an answer to the complaint, denying all allegations of fraud and breach of fiduciary duty. As affirmative defenses to the complaint, petitioner claimed that the complaint failed to state facts sufficient to constitute a cause of action and that the agreement upon which the daughters' lawsuit was based was not in compliance with the Statute of Frauds. Petitioner believed that if the daughters prevailed in the portion of their suit requesting an order declaring petitioner "to hold those assets which were the subject of decedent's prepared but unexecuted mutual reciprocal will as constructive trustee for the benefit of plaintiffs and their brother," they would get control of his separate assets and would receive such assets upon his death. Petitioner believed that the Bohner lawsuit was brought by his wife's daughters in an attempt by them to establish the trust prepared by Small. Petitioner retained James Edgar Hervey, Inc. and Jacklyn Becker Horton (hereinafter "Hervey & Horton") to represent him in the Bohner lawsuit. During 1981, petitioner was billed by Hervey & Horton for legal services pertaining to the Bohner lawsuit on the following days and in the following *589 amounts: Professional
Total
Date of Invoice
Costs Advanced
Services
Billed
June 4, 1981
$     3.37
$  1,312.50
$  1,315.87
July 15, 1981
121.04
4,102.50
4,223.54
August 5, 1981
108.47
3,525.00
3,633.47
September 10, 1981
358.33
2,860.00
3,218.33
December 7, 1981
1,332.29
2,578.00
3,910.29
Total
$ 1,923.50
$ 14,378.00
$ 16,301.50
During 1981, petitioner also was billed for legal services rendered by Small on the following dates and in the following amounts: Date of
Costs
Professional
Invoice
Advanced
Services
Total
July 6, 1981
$ 71.96
$ 1,274.00
$ 1,345.96
August 4, 1981
460.00
460.00
September 14, 1981
220.00
220.00
October 5, 1981
544.50
544.50
Total
$ 71.96
$ 2,498.50
$ 2,570.46
Petitioner paid all of these invoices in 1981. The fees paid to Small were related to petitioner's defense of the Bohner lawsuit. Small was a potential witness in the civil case since he had prepared the draft trust agreement and wills and had discussed the matter with petitioner and his wife. Therefore, Hervey & Horton consulted with Small in connection with the Bohner *590 lawsuit. The billings of $ 2,570.46 arose from Small's participation in the Bohner lawsuit and were not billings for legal services performed in rendering tax advice to or tax services for petitioner in 1980 or 1981. The daughters subsequently determined that the Bohner lawsuit was without merit. Consequently, the parties dismissed the Bohner lawsuit with prejudice, with the daughters receiving nothing on their suit. No evidence was submitted as to the date on which the Bohner lawsuit was dismissed. The origin of the Bohner lawsuit was the daughters' attempt to acquire an interest in the disputed assets. Petitioner deducted the legal fees relating to the defense of the Bohner lawsuit on his 1981 Federal income tax return as expenses incurred in connection with his management and conservation of income-producing property owned by him. In his notice of deficiency, respondent disallowed $ 18,641 of the amount claimed on petitioner's return for legal fees. [5] None of the attorneys who rendered legal services for petitioner in 1981 testified at the trial before this Court. *591 OPINION We must determine whether the legal expenses in issue were incurred to manage, conserve, or maintain income-producing property or were personal expenses or capital expenditures. Petitioner asserts that the legal expenses in issue were related to the defeat of an unwarranted attempt to establish a management, separate from his own, over all of his income-producing property, which under the law of California, belonged to him when the suit was brought. Therefore, petitioner argues, the legal expenses are deductible under section 212, [6] as expenses incurred in the management, conservation, or maintenance of income-producing property. Respondent, on the other hand, contends that the claim against petitioner arose out of a marital or family matter and, therefore, under section 262, [7] the legal expenses are nondeductible, personal expenses. Respondent further contends that, to the extent any portion of the legal fees are allocable to petitioner's defending against the imposition of a constructive trust upon his assets, those expenses relate to the defense of title to such property and, under section 263, [8] are nondeductible capital expenditures. Furthermore, respondent asserts *592 that, even if some of the expenses otherwise are found to be deductible under section 212, petitioner failed to introduce evidence which would provide an adequate basis upon which to allocate the legal fees between deductible and nondeductible expenses. We agree with respondent that the legal expenses do not fall within the category of expenditures for which a deduction is permitted under section 212. We do not agree, however, that the legal expenses are personal expenses, but find them to be expenditures incurred for the defense of title to the property, and, hence, capital expenditures. *593 Section 212, among other things, allows a deduction for ordinary and necessary expenditures paid or incurred for the management, conservation, or maintenance of property held for the production of income. To satisfy the requirements of section 212, the expenditures must be reasonable in amount and must bear a reasonable and proximate relation to the management, conservation, or maintenance of property held for the production of income. Trust of Bingham v. Commissioner,325 U.S. 365, 370 (1945). The terms "management," "conservation," and "maintenance" have been construed to refer to the actual protection, safeguarding, or upkeep, of physical assets, not to a taxpayer's retention of ownership of the property. United States v. Gilmore, 372 U.W. 39, 44 (1963); Reed v. Commissioner,55 T.C. 32, 42 (1970). Thus, to qualify as expenses incurred for the "management" of property held for the production of income, the legal expenses must be directly connected with or proximately related to a function of "management" of the property. Trust of Bingham v. Commissioner,325 U.S. at 375. *594 Expenditures which are proximately related to the acquisition or disposition of a capital asset, or to the defense or perfection of title to property, however, are nondeductible, capital expenditures. Sec. 263; Woodward v. Commissioner,397 U.S. 572, 575 (1970); Boagni v. Commissioner,59 T.C. 708, 711-712 (1973). It is well established that, to be deductible, legal expenses incurred in resisting a claim must relate to a claim which "arises in connection with the taxpayer's profit-seeking activities." For this purpose, the possible consequences to a taxpayer's income-producing property from a failure to defeat the claim is not determinative. United States v. Gilmore, 372 U.S. at 48. In Gilmore, the Court set forth the "origin-of-the-claim" test, i.e., the origin and nature or character of the claim with respect to which an expense was incurred, as the test for determining whether legal expenses are deductible business expenses or nondeductible personal expenses. Gilmore v. Commissioner, 372 U.S. at 49; *595 Redwood Empire S & L Assn. v. Commissioner,628 F.2d 516, 520 (9th Cir. 1980). Woodward v. Commissioner, supra, expanded usage of the origin-of-the-claim test to claims involving the acquisition or disposition of capital assets. This Court has extended the origin-of-the-claim test to cases involving the defense or perfection of title to property. See, e.g., Reed v. Commissioner,55 T.C. at 39-41; Boagni v. Commissioner, supra.The origin-of-the-claim test characterizes an expense as a capital expenditure if the expense is made to protect one's interest in an asset. Arthur H. DuGrenier, Inc. v. Commissioner,58 T.C. 931, 938 (1972). The origin-of-the-claim test does not contemplate a mechanical search for the first in a chain of events which led to the litigation. Rather, the test requires an examination of all of the facts, directed toward determining the "kind of transaction" out of which the litigation arose. Boagni v. Commissioner,59 T.C. at 713. Thus, "Consideration must be *596 given to the issues involved, the nature and objectives of the litigation, the defenses asserted, the purpose for which the claimed deductions were expended, the background of the litigation, and all facts pertaining to the controversy." Boagni v. Commissioner, supra, citing Estate of Morgan v. Commissioner,332 F.2d 144, 151 (5th Cir. 1964). See, however, Keller Street Development Co. v. Commissioner,688 F.2d 675, 680 (9th Cir. 1982), affg. a Memorandum Opinion of this Court, where the court criticized the use of these factors in applying the origin-of-the-claim test to a payment when acquisition of property is involved. Petitioner asserts that the trust instrument reflects a plan for management of (1) the separate property of Mrs. Duntley, (2) their community property, and (3) petitioner's separate property theretofore solely managed by him, and that the litigation affected petitioner's continued management of his own separate property as well as the property he inherited from his wife. Therefore, petitioner contends, the Bohner lawsuit was related directly to his retaining management control of all of his property, including *597 the inherited property. Petitioner contends further that the draft trust agreement is the origin of the claim and its character is directly related to the impact of the litigation upon management of petitioner's assets. He argues that the control of management of those assets was the basic issue in the litigation in question. Thus, petitioner concludes, the legal fees were incurred in connection with the management of income-producing assets and are deductible under section 212. At the trial, petitioner testified that if the daughters had prevailed in the Bohner lawsuit in their request for a constructive trust, they would have acquired the assets upon his death. Petitioner testified further that the daughters had brought the Bohner lawsuit in an attempt to obtain control of the property which would have been transferred in trust had the trust agreement, as drafted, been executed. Loss of management of petitioner's assets, thus, was merely a possible consequence of petitioner's failure to defeat the daughters' claims. Petitioner is confusing "management" of the assets with retention of their ownership. Looking at all of the surrounding facts, the pleadings, and petitioner's *598 testimony, it is clear that the daughters' claims did not have their source, or origin, in the management of petitioner's assets. Rather, the daughters believed that, if a constructive trust were established over the assets, upon petitioner's ultimate death they would inherit these assets. The Bohner lawsuit was an attempt by the daughters to obtain by legal process an interest in those assets. It is immaterial for purposes of section 212 that the daughters would not have prevailed on the merits. Burch v. United States,698 F.2d 575, 579 (2d Cir. 1983); Estate of Beier v. Commissioner,533 F.2d 117, 120-121 (3d Cir. 1976); Galewitz v. Commissioner,411 F.2d 1374 (2d Cir. 1969), revg. 50 T.C. 104 (1968). The Bohner lawsuit had its origin in the daughters' belief that they were entitled to assets held by petitioner which they believed, rightly or wrongly, petitioner and their mother had intended would devolve to them upon the ultimate demise of both, and in the daughters' attempt to secure for themselves what they believed to be their right to this property. The legal expenses at issue were incurred by petitioner *599 in his efforts to defend against this cloud upon his heretofore undisputed title to these assets. In Reed v. Commissioner, supra, this Court found legal expenses expended in an unsuccessful attempt to rescind a partnership agreement which contained certain restrictions upon the future sale of the partnership interest to be nondeductible capital expenditures incurred in perfecting title to property. We reasoned that the restrictions -- which deprived the taxpayer-wife of her right to sell her interest to whomever she pleased at any price she desired -- cast an equitable shadow on her interest. Similarly here, had the daughters prevailed and a constructive trust been placed on the property, an equitable shadow also would have been cast on petitioner's interest in the assets -- he would have been deprived of the right to determine to whom the property would devolve upon his death. The fact that the daughters actually had no legal title to the property is a distinction without significance. The character of this Bohner lawsuit was inherently a defense of title to the property and, consequently, the expenses are capital in nature and must be added to the cost of *600 those assets. Woodward v. Commissioner,397 U.S. at 574. Respondent contends that the legal expenses are nondeductible, personal expenses because the claims against petitioner arose out of a marital or family matter. As discussed above, however, a determination of the origin of the claim requires an examination of all of the facts and circumstances. Boagni v. Commissioner,59 T.C. at 713. Gilmore v. Commissioner, supra, and its progeny require that this Court look to the origin and character of the claim or claims litigated, and not merely to the pleadings or the damages sought, to determine the deductibility of the legal expenses. See for example Clark Oil and Refining Corp. v. United States,473 F.2d 1217 (7th Cir. 1973) (injunction and monetary damages sought for alleged nuisances and trespasses); Wagner v. Commissioner,78 T.C. 910 (1982) (money damages sought for alleged SEC violations).[9] It is clear from all of the evidence that the gist of both causes of action raised in the Bohner lawsuit was that through petitioner's alleged wrongful conduct he had obtained an interest in property *601 which he and Mrs. Duntley purportedly had agreed would go to her daughters. Both underlying claims were rooted in the daughters' attempt to obtain title to the disputed property and, thus, both claims were capital in nature. Neither the fact that the daughters were unsuccessful nor that their claim was baseless affects the lawsuit's nature or character. See Reed v. Commissioner, supra.Thus, since the character of all the claims is capital, the legal expenses incurred in defending against those claims also are all capital expenditures. Since this Court has found all of the legal expenses to be capital expenditures, we need not address the question raised by respondent regarding the sufficiency of proof for purposes of making an allocation of the legal expenses. Based on the foregoing, Decision will be entered for the respondent. *602 Footnotes
1. Petitioner concedes a $ 550.00 disallowance for business gifts. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided. ↩
3. Petitioner had established four trusts before 1980 for the benefit of his children from a previous marriage. These latter trusts are not involved in this case. ↩
4. The prayer to the compalint contained the following: Wherefore, plaintiffs pray for judgment against defendants, and each of them, as follows: A. On Their First Cause of action 1. For general damages according to proof; 2. For punitive damages in the sum of $ 750,000.00; B. On Their Second Cause of action 1. For general damages according to proof; 2. For punitive damages in the sum of $ 750,000.00; 3. For this court's order imposing a constructive trust upon the assets of the estate of Ellen Gale Duntley and for this court's order declaring defendant Lennon Duntley to hold those assets which were the subject of decedent's prepared but unexecuted mutual reciprocal will as constructive trustee for the benefit of plaintiffs and their brother; C. As to Both Causes of Action 1. For costs of suit; and 2. For such other and further relief as the the court deems just and proper. ↩
5. Respondent, in his notice of deficiency, disallowed $ 18,641 in legal fees claimed for 1981. The total fees paid in 1981 to Hervey & Horton and Mr. Small totaled $ 18,871.96. The record does not explain the $ 230.96 discrepancy in the amount so paid and the amount disallowed. ↩
6. SEC 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * * ↩
7. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
8. SEC. 262. CAPITAL EXPENDITURES. (a) General Rule. -- No deduction shall be allowed for -- (1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * * ↩
9. See also Shirley v. Commissioner,T.C. Memo 1970-317↩ (legal expenses incurred in litigation over stock ownership seeking general damages, punitive damages, and a constructive trust over stock and/or monies resulting therefrom were held to be capital expenditures incurred in defense of title to property).